OPINIONS OF THE SUPREME COURT OF OHIO
The full texts of the opinions of the Supreme Court of
Ohio are being transmitted electronically beginning May 27,
1992, pursuant to a pilot project implemented by Chief Justice
Thomas J. Moyer.
Please call any errors to the attention of the Reporter's
Office of the Supreme Court of Ohio. Attention: Walter S.
Kobalka, Reporter, or Deborah J. Barrett, Administrative
Assistant. Tel.: (614) 466-4961; in Ohio 1-800-826-9010.
Your comments on this pilot project are also welcome.
NOTE: Corrections may be made by the Supreme Court to the
full texts of the opinions after they have been released
electronically to the public. The reader is therefore advised
to check the bound volumes of Ohio St.3d published by West
Publishing Company for the final versions of these opinions.
The advance sheets to Ohio St.3d will also contain the volume
and page numbers where the opinions will be found in the bound
volumes of the Ohio Official Reports.

The State ex rel. Durant, Appellant and Cross-Appellee, v.
Superior's Brand Meats, Inc., Appellee and Cross-Appellant;
Industrial Commission of Ohio, Appellee.
[Cite as State ex rel. Durant v. Superior's Brand Meats, Inc.
(1994),    Ohio St.3d    .]
Workers' compensation -- Commission's order denying future
    chiropractic treatments must state basis for denial --
    Commission does not abuse its discretion in assessing an
    overpayment against claimant, when.
    (No. 93-798 -- Submitted March 1, 1994 -- Decided May 11,
1994.)
    Appeal and Cross-Appeal from the Court of Appeals for
Franklin County, No. 91AP-404.
    Appellant-claimant, Cathy S. Durant, injured her low back
in the course of and arising from her employment with
cross-appellant, Superior's Brand Meats. Superior's Brand, a
self-insured employer, apparently initiated temporary total
disability compensation on May 6, 1985. On May 29, 1987, an
Industrial Commission district hearing officer terminated
compensation for temporary total disability based on maximum
medical improvement and ability to return to the former
position of employment. Claimant's timely appeal has never
been adjudicated.
    Possibly in response to the district hearing officer's
finding of maximum medical improvement, Superior's Brand sought
to terminate its payment for claimant's ongoing chiropractic
treatment. Following a November 25, 1987 hearing, a district
hearing officer ordered Dr. Bille's outstanding chiropractic
bills paid and discontinued authorization for further
treatment, writing:
    "The Employer's motion, filed July 27, 1987, is granted.
No further chiropractic treatments are authorized; as per Dr.
Bille's fee bill dated 9-16-87, covering services from May 4,
1987 through August 11, 1987, inclusive.
    "Claimant has received the treatment recommended by Dr.
Weaver in his March 19, 1987 report.
    "This District Hearing Officer finds that the treatment
rendered by Dr. Bille through August 11, 1987, was appropriate,

necessary and due to the allowed conditions in the instant claim. The claimant is ordered to submit Dr. Bille's progress report to the file.

"The District Hearing Officer, in making this finding, has taken the following evidence into consideration:

"Dr. Bille, claimant's physician's fee bills in file.

"Dr. Weaver, state examiner's report of March 19, 1987."

A regional board of review affirmed on May 4, 1988. Claimant again appealed.

During the pendency of the chiropractic issue, the employer alleged that claimant had been employed elsewhere while receiving temporary total disability compensation and asked that an overpayment be declared. Shortly thereafter, claimant filed a C85A claim reactivation form seeking authorization for further treatment from newly retained physician, Robert C. Erickson II. These two motions were heard on December 2, 1988 by a district hearing officer, who held:

"The claimant's Application to Re-Activate Claim and motion are granted to the extent of this order.

"Authorization is granted for medical treatment rendered and further medical treatment.

"Authorization is granted for five treatments per week for six weeks, as requested on the C-161 filed October 19, 1988.

"* * *

"The employer's motion is granted to the extent of this order.

"It is the finding of this Hearing Officer that the claimant received Temporary Total Disability compensation from the Self-Insured employer from October 31, 1985 through May 28, 1987, inclusive, in the total amount of $21,192.87[.] It is further the finding of this Hearing Officer that the claimant was self-employed and earning substantial commissions through Queens-Way to Fashion and Entourage International from October 31, 1985 through at least May 28, 1987, inclusive.

"Further, this Hearing Officer finds that due to her self-employment, the claimant was not eligible to receive Temporary Total Disability compensation from October 31, 1985 through May 28, 1987, inclusive.

"Therefore, it is ordered that the claimant was overpaid Temporary Total Disability compensation from October 31, 1985 through May 28, 1987, inclusive, in the total amount of $21,192.87.

"The claimant is ordered to repay said overpayment to the Self-Insured Employer.

"The Hearing Officer, in making these findings, has taken the following evidence into consideration:

"Dr. Erickson, claimant's physician's findings and opinion per multiple reports on file.

"Testimony at hearing.

"Multiple reports in file."

Claimant appealed the overpayment finding to the regional board. Superior's Brand likewise appealed, objecting to authorization for further treatment and the decision to declare an overpayment retroactive only to October 31, 1985. The regional board, however, denied both appeals on May 3, 1989 and affirmed the district hearing officer without comment.

On November 14, 1989, Superior's Brand, in response to

claimant's refusal to release her medical records, moved to suspend all action in claimant's claim. Without addressing this motion, staff hearing officers, on March 16, 1990, heard claimant's appeal of the May 4, 1988 chiropractic termination order and the joint appeal of the May 3, 1989 order. Staff hearing officers denied all appeals, writing:

"It is the finding and order of the Hearing Officers that Claimant's appeal filed 6-1-88 be denied, and the finding and order of the Regional Board dated 5-4-88 be affirmed for the reason that it is supported by proof of record and is not contrary to law.

"It is the further finding and order of the Hearing Officers that Claimant's appeal filed 7-5-89 and the Employer's Appeal filed 7-11-89 be denied, and the finding and order of the Regional Board dated 5-3-89 be affirmed for the reason that it is supported by proof of record and is not contrary to law.

"In arriving at this decision, the following evidence was reviewed and evaluated:

"1) Claimant's testimony at hearing;

"2) Letter of Gerald Durant dated 11-16-89;

"3) Transcript of hearing of 12-2-88;

"4) 1985 and 1986 joint tax returns and exhibits thereto;

"5) Industrial Commission Investigation Division report, including:

"a) Entourage Enterprises, Inc[.] letter of 11-11-87;

"b) 1985 and 1986 1099 tax forms from Queens-Way to Fashion, Inc[.];

"c) Entourage "Application Form";

"d) Queens-Way letter of 11-5-87;

"e) Investigation report of E[.] Joseph Schmitt dated 2-3-88;

"(6) Reports of Dr. Erickson previously filed, including C-85A report filed 8-19-88 and report of 12-1-88."

The litigants moved to the Court of Appeals for Franklin County. Superior's Brand alleged that the commission abused its discretion by (1) failing to find that the overpayment began on May 6, 1985, and (2) proceeding with the March 16, 1990 staff hearing without addressing its suspension motion. Claimant contested both declaration of overpayment and chiropractic termination. The appellate court ultimately (1) upheld the overpayment order in its entirety; (2) upheld the C85A claim reactivation; (3) ordered the regional board to proceed on claimant's appeal of the May 27, 1987 order terminating compensation for temporary total disability; and (4) vacated that portion of the staff hearing officer's March 16, 1990 order denying further chiropractic treatment and ordered the commission to issue a new order consistent with State ex rel. Noll v. Indus. Comm. (1991), 57 Ohio St.3d 203, 567 N.E.2d 245.

This cause is now before this court upon an appeal and cross-appeal as of right.

R.E. Goforth Co., L.P.A., R.E. Goforth and Steven G. Thomakos, for appellant and cross-appellee.

Buckingham, Doolittle & Burroughs, Eleanor J. Tschugunov and Brett L. Miller, for appellee and cross-appellant.

Lee I. Fisher, Attorney General, and Gloria P. Castrodale,

Assistant Attorney General, for appellee.

Per Curiam.  This dispute has three components: (1) claimant's C85A claim reactivation, (2) chiropractic treatment, and (3) overpayment.  Upon review, we affirm in full the appellate court's disposition of the first two.  Its judgment as to the remaining question is upheld only in part.

Common to each challenge is the March 16, 1990 staff hearing -- either in terms of the proceeding itself or the order that it generated.  As to the former, Superior's Brand contends that its pending motion for suspension of further activity in claimant's claim should have prevented the March 1990 hearing from going forward.  We disagree.

Certainly, it would have been preferable for the commission to have disposed of Superior's Brand's motion before the staff hearing.  We do not, however, find that this failure was an abuse of discretion. Superior's Brand's motion was precipitated by claimant's failure to relinquish certain medical records, and we recognize Superior's Brand's frustration with claimant's position.

Superior's Brand's argument, however, appears to be largely  premised on its belief that had its motion been heard, the commission would have been required to suspend the claim, forcing claimant to surrender her records.  However, Ohio Adm. Code 4121-3-12(B) states that in the event that a claimant fails to cooperate with his or her self-insured employer, the commission "may withhold action on the claim."  (Emphasis added.)  Thus, suspension was not a given and Superior's Brand was not stripped of a right it otherwise would have possessed had its motion been decided first.

We are equally unpersuaded by Superior's Brand's suggestion that the commission's failure to suspend the claim left it without any means to force claimant to relinquish her records.  Superior's Brand could have asked the commission to demand the records.  Had claimant still refused, the commission may have been more inclined to act.

Finally, we find no merit to Superior's Brand's allegation of a constitutional violation.  Superior's Brand maintains that the commission denied it due process by forcing it to address claimant's C85A without claimant's medical records.  Superior's Brand's argument, however, ignores its own substantial contribution to its predicament.

Claimant filed her C85A on August 19, 1988.  Superior's Brand's first request for medical records was not made until approximately one year later.  More important, Superior's Brand's preliminary request to claimant was not made until ten weeks after the regional board's hearing on the disputed C85A. Being unpersuaded that Superior's Brand's request could not have come in a more timely fashion, we find its argument unconvincing.

Superior's Brand's challenge to continued chiropractic treatment arose from Dr. Mark E. Weaver's March 19, 1987 report, which stated in part:

"I feel the claimant's present condition does not warrant further intensive chiropractic care.  I recommend further treatment at a frequency of once every two weeks for two months and once a month for two months, with a progress report by

[her] treating physician at that time. * * *"

In response, Superior's Brand moved to halt further authorization for treatment. By the time the motion was heard, however, claimant had already received the treatment recommended by Dr. Weaver. Accordingly, the district hearing officer ordered payment for all treatment already rendered. In denying payment for further chiropractic treatment, the hearing officer stated that he had "taken the following evidence into consideration:

"Dr. Bille, claimant's physician's fee bills in file.

"Dr. Weaver, state examiner's report of March 19, 1987." (Emphasis added.)

The district hearing officer also explained:

"No further chiropractic treatments are authorized; as per Dr. Bille's fee bill dated 9-16-87, covering services from May 4, 1987 through August 11, 1987 inclusive.

"The claimant has received the treatment recommended by Dr. Weaver in his March 19, 1987 report."

The order was administratively affirmed without comment. Upon examination, we find an evidentiary deficiency warranting further consideration and amendment under Noll, supra. The commission's explanation implies that chiropractic treatment was terminated pursuant to Dr. Bille's fee bill. That bill, however, says nothing about the necessity, or lack thereof, for additional treatment. Conversely, we cannot assume that it was actually Weaver's report that was relied on, since it is possible that the commission consulted the Weaver report on the question of past treatment only. Absent clarification of the basis for the denial of future treatment, our review can go no further. Accordingly, further explanation is necessary.

We turn finally to the issue that has generated both appeal and cross-appeal -- the commission's declaration of overpayment. Claimant denies that an overpayment exists. Superior's Brand contests the date on which the overpayment was determined to have started. Only the latter challenge has merit.

Claimant contests the commission's determination that she was gainfully employed while receiving temporary total compensation. Alternatively, she maintains that her employment does not preclude temporary total compensation. Both arguments fail.

The dispute over entitlement to temporary total disability compensation arises from claimant's involvement with two home distributorships -- Queens-Way to Fashion, Inc. and Entourage International, Inc. Claimant's activities came to light in 1986 and 1987 when Superior's Brand - - acting on employee tips - - hired Niam Investigations to investigate claimant.

Niam initially discovered that claimant had been a sales representative for Queens-Way since approximately mid-1985. A short time later, a Niam investigator responded to an Entourage ad in the local newspaper that listed claimant's phone number as the contact. Posing as a prospective recruit, the investigator contacted claimant and recorded the conversation. Claimant indicated that she was "the area director for the State of Ohio" and had joined the enterprise "over a year ago." Claimant alleged an income of about $10,000 a month. There was no mention of any participation in the business by

her husband.

At an Entourage recruitment meeting only days later, an investigator reported that "it was very visible that she [claimant] was in charge of the meeting (i.e. greeting all, entrance speech of main speakers, controls of the tape on the VCR, and concluding the meeting)."

The investigator also noted claimant's behavior in a telephone conversation a few days later:

"Mrs. Durant was not very receptive and from the onset of the conversation Mrs. Durant began to change her story. She stated the business was actually her husband's and that she simply talked to people who inquired. * * * Inv. #419 believes that Mrs. Durant was changing her story because she feared she was being investigated. She was tripping over her words in an attempt to tie her husband into the Company."

Superior's Brand forwarded this information to the Industrial Commission's Investigation Division ("ICID"). ICID initiated its own inquiry and interviewed claimant on October 22, 1987. Claimant told ICID that she joined Queens-Way before May 1985. Claimant stated that she did some paperwork, collected and returned orders and attended some Queens-Way parties. She further stated that she joined Entourage in 1985 or 1986, went to meetings and seminars, and did phone and promotion work. She denied any strenuous work activity.

Queens-Way stated that "Cathy and Gary Durant, in the conduct of their own business, served as distributors of Queens-Way fashions in 1985 and 1986." IRS form 1099 from Queens-Way to the Durants reported $5,220.94 and $3,098.71 in "Miscellaneous Income" for those two years.

A. R. Craig, Entourage's controller, listed claimant's 1985, 1986 and 1987 commissions as $184.80, $11,168 and $9,302.07, respectively. This letter made no reference to any involvement in Entourage operations by claimant's husband.

Claimant's 1040 tax forms contained other relevant information. For example, claimant and her husband in 1986 filed a "Schedule C Profit or Loss for Business or Profession" that listed the proprietor as "Cathy and Gary Durant at 50% each" and described the business as "sales." Claimant also claimed business depreciation on a car. Percentage of business use was listed as 53.5 with annual business miles totalling 15,784. 1987 tax forms were much the same.

ICID also obtained a copy of the 1988 publication "Scentiments" which profiled claimant - - by then the company's executive vice president - - as follows:

"Cathy Durant began her career in network marketing just three short years ago. Little did she realize that first small sample kit would change her life so dramatically.

"After working 16 years in a meat packing plant, Cathy was ready for new goals, new challenges, a way to improve her lifestyle and chart a new course. For the first 6 months, she worked the business part time to supplement income from her regular job. Suddenly, circumstances changed! Because of an on the job back injury, her 'good secure job' of 16 years was in jeopardy. No longer an asset to her company, she now became a liability with no future and no security.

"Crisis does indeed present opportunity! The 'little part-time job' now became Cathy's full focus and she quickly

seized the opportunity to learn, to grow personally, to gain in depth training, to share the opportunity and rise to the top as an area and national sales and recruiting leader. Dreams were beginning to come true and the vision was clear for the future." (Emphasis sic.)

On February 3, 1988, ICID issued its final report, which incorporated all of the above evidence, and concluded that claimant "was self employed as a sales representative, and received substantial commissions while concurrently receiving Ohio Bureau of Workers' Compensation benefits." Superior's Brand responded with its overpayment motion.

All of this evidence was cited by the staff hearing officers in support of their decision. Claimant asserts that the staff hearing order is fatally flawed, having listed the evidence therein as "reviewed and evaluated" rather than "relied on." We disagree.

Claimant's argument rests on the important distinction between evidence which the commission "relied on" and that which it merely "considered." As we have indicated since State ex rel. Mitchell v. Robbins & Myers, Inc. (1983), 6 Ohio St.3d 481, 6 OBR 531, 453 N.E.2d 721, our evidentiary review is confined to the former. On two recent occasions, we returned orders to the commission for clarification and amendment because the commission had listed various doctors reports as "considered" instead of "relied on." See State ex rel. Gen. Am. Transp. Corp. v. Indus. Comm. (1990), 49 Ohio St.3d 91, 551 N.E.2d 155, and State ex rel. B.O.C. Group, Gen. Motors Corp. v. Indus. Comm. (1991), 58 Ohio St.3d 199, 569 N.E.2d 496.

BOC and GATC, however, are distinguishable. In both, the cited evidence was contradictory - - while some of the physician's reports indicated that the claimant could return to her former position of employment, others concluded the opposite. This conflict made evidentiary review impossible. If we assumed that the commission had relied on Doctors A and B, the orders were indeed supported by some evidence. On the other hand, the order was unsupported if we assumed reliance on Doctors C and D. Thus, clarification of which reports were specifically relied on was necessary.

In this case, the evidence described as "reviewed and evaluated" does not conflict. None of the evidence supports claimant's allegation that she was uninvolved in Queens-Way or Entourage. To the contrary, the evidence indicates that claimant actively participated in both endeavors. The validity of the commission's decision does not, therefore, hinge on which piece of evidence it relied. Judicial review can be accomplished without further clarification.

Claimant also accuses the commission of somehow violating her due process rights. Claimant's argument, however, is difficult to follow because it is premised on consideration of the "ICID private investigative report prepared by the employer." No such document exists. The employer prepared no report, and the ICID report and private investigative report - - the Niam report - - are two different things. Claimant also repeatedly refers to ICID reports, even though only one report was prepared.

The alleged violation stems from her claim that she "was not formally made aware that said reports were part of the

record." (Emphasis added.)  Again, it is unclear to what documents she is speaking and what "formally made aware" means.  Claimant was contacted by ICID in October 1987.  She thus knew at that time that she was being investigated and that a report would follow.  Moreover, Superior's Brand certified on March 2, 1988 that it had sent a copy of its overpayment motion to claimant's counsel, and that motion specifically refered to the ICID report.

We suspect that the claimant is alleging that she either did not receive a copy of the ICID report or, alternatively, original copies of the documents attached to the report.  Claimant, however, does not dispute that she knew of the ICID report.  She also does not dispute that the report was contained in her workers' compensation file and was available to her at any time during the ten months between Superior's Brand's motion and the district hearing.  Thus, if claimant is alleging that she had no opportunity to confront her accusers, her assertion is simply untrue.  At a minimum, claimant had ten months in which to obtain rebuttal evidence or subpoena parties from Queens-Way and Entourage.  That claimant chose not to examine the evidence to be used against her is a self-created obstacle.

Claimant's hearsay argument is equally untenable, since R.C. 4123.10 frees the commission from the usual common-law or statutory rules of evidence.  See, also, State ex rel. Roberts v. Indus. Comm. (1984), 10 Ohio St.3d 1, 10 OBR 1, 460 N.E.2d 251.  Claimant's evidentiary challenges to the commission order are accordingly rejected.

Claimant alternatively contends that temporary total compensation is not barred because (1) her earnings did not arise from full-time employment, and (2) she is a potential "odd lot" employee.  Both assertions lack merit.

State ex rel. Johnson v. Rawac Plating Co. (1991), 61 Ohio St. 3d 599, 575 N.E.2d 837, destroys claimant's initial argument, holding that part-time work indeed precludes compensation for temporary total disability.  Claimant's response that Rawac cannot be retroactively applied to destroy her right to temporary total disability compensation fails for two reasons.  First, claimant never had a right to engage in gainful employment while drawing temporary total disability compensation.  Contrary to her representation, State ex rel. Nye v. Indus. Comm. (1986), 22 Ohio St.3d 75, 22 OBR 91, 488 N.E.2d 867, never said that only full-time alternate employment barred temporary total disability compensation.  It said only that full-time employment did bar temporary total disability compensation.  Second, Rawac did not retroactively change substantive law.  It simply interpreted law that had controlled since 1982 - - the prohibition of State ex rel. Ramirez v. Indus. Comm. (1982), 69 Ohio St.2d 630, 23 O.O. 3d 518, 433 N.E.2d 586, against concurrent wages and temporary total disability compensation.

The odd-lot doctrine raised in claimant's second argument has never been accepted or rejected in this state.  Our only encounter with the theory was in Nye, a decision whose facts were held to be unconducive to consideration of the odd-lot doctrine.  The same holds true here.

The odd-lot concept is generally used to preserve the

eligibility for total disability compensation of one who can theoretically do some work, but "is so handicapped by a compensable injury that he will no longer be employed regularly in any well known branch of the competitive labor market and will require a specially-created job if he is to be steadily employed." Ham v. Chrysler Corp. (Del. 1967), 231 A.2d 258, 261.

The distinguishing feature of odd-lot employment is its "irregularity and unpredictability." Wendt v. North Dakota Workers' Comp. Bur. (N.D. 1991), 467 N.W.2d 720, 725. See, also, Larson, The Law of Workmen's Compensation (1992), Section 57.51(c). This alone makes the present claimant - - and the nature of her employment - - unlikely candidates for application of the odd-lot doctrine. While the success of her enterprises may be irregular and unpredictable, her ability to engage in the work itself is not. Claimant is her own boss and any incontinuity in the work itself is of claimant's making.

Claimant has also not established that she possesses the required degree of disability common to all odd-lot cases. She has not alleged that she is removed from all other employment save for home sales. Claimant alleges only that she cannot return to her former position of employment - - a conclusion with which the commission disagrees. Odd-lot employment would be only the exception, not the rule, and is seen only in particularly egregious situations. As observed by the Montana Supreme Court in Metzger v. Chemetron Corp. (1984), 212 Mont. 351, 357, 687 P.2d 1033, 1036:

"The [odd-lot] rule above is gleaned from cases involving, among others, a sixty-one-year-old claimant suffering severe mental deficiency, a previously injured illiterate diabetic, a forty-year-old laborer with one month of formal education, and a seventy-year-old arthritic laborer. * * * Claimant, here, is twenty-eight years old, enjoys high manual dexterity skills, above average intelligence and has gained experience in a variety of job settings."

Likewise, the present claimant is forty-two years old with the business acumen to rise to an executive level of leadership in two ventures - - Entourage and Scentsations. She is not the type of work-amenable claimant that the odd-lot exception is designed to assist.

We thus find that, like Nye, the present case is not conducive to broader consideration of odd-lot doctrine and reject claimant's odd-lot defense. Accordingly, we find that the commission did not abuse its discretion in assessing an overpayment against claimant.

We turn last to Superior's Brand's objection to the date on which the overpayment was held to have started. Noting claimant's admission that she joined Queens-Way before her temporary total disability began, Superior's Brand argues that the commission abused its discretion in starting overpayment at October 31, 1985 instead of May 6, 1985 - - the date temporary total disability compensation started. Superior's presents a persuasive argument.

Contrary to the appellate referee's report, adopted by the court, it is not obvious why the district hearing officer selected October 31, 1985 as the first date of overpayment. The order says only that claimant was "earning substantial

commissions through Queens Way Fashion and Entourage International from October 31, 1985."  The referee theorized that October 31, 1985 corresponds to the date of claimant's written application to be a representative for Entourage, and a reference in an November 11, 1987 letter from Entourage's controller indicating that "commissions were initially paid to Miss Durant during November 1985, representing remuneration for October sales."  The referee speculated that the district hearing officer chose this date because it was the first specific date to which remuneration could actually be documented.

The logic of the referee's reasoning falters when balanced against the facts as a whole.  The total commissions for claimant's three months in 1985 with Entourage were $184.80.  Conversely, claimant's 1985 commissions with Queens-Way were $5,220.94.  If, as the referee states, there is no evidence of any remuneration prior to October 31, 1985, one must assume that claimant's entire $5,200 in Queens-Way commissions were also earned subsequent to October 1985.  This leads to one of two conclusions - - either claimant was an exemplary salesperson or claimant earned her $5,200 over a period exceeding three months.  Because the latter alternative appears at least as plausible as that put forth by the referee, the commission's explanation for its decision is inadequate in this situation.  We accordingly order the commission to amend its order with further explanation pursuant to Noll.

For the reasons given above, we hereby reverse that portion of the appellate judgment that upheld the overpayment start date, and remand the cause to the commission for further proceedings.  The balance of the judgment is affirmed.

> Judgment reversed in part, affirmed in part and cause remanded.

A.W. Sweeney, Douglas, Wright, Resnick and F.E. Sweeney, JJ., concur.

Moyer, C.J., dissents and would reverse the judgment and remand the cause to the cause to the Industrial Commission.

Pfeifer, J., dissents and would deny coverage from May 6, 1985 and further chiropractic treatment.