ON OBJECTIONS TO THE MAGISTRATE'S DECISION IN MANDAMUS DECISION
Relator, American Standard, Inc., has filed an original action in mandamus requesting this court to issue a writ of mandamus to order respondent, Industrial Commission of Ohio, to vacate its order that denied relator's application to terminate temporary total disability compensation granted to claimant, Robert E. Boehler, and to enter an order terminating such compensation.
This court referred the matter to a magistrate, pursuant to Civ.R. 53(C) and Section (M), Loc.R. 12 of the Tenth District Court of Appeals, who rendered a decision including findings of fact and conclusions of law. (Attached as Appendix A.) The magistrate decided that a writ of mandamus should be denied.
Relator has filed objections to the magistrate's decision. Relator objects to the magistrate's conclusion that the commission did not abuse its discretion by relying on the report of Dr. Gase to find that claimant had not reached maximum medical improvement. Relator also objects to the magistrate's conclusion that there was some evidence that claimant's activities, involving rental property he owns, did not constitute engaging in sustained remunerative employment inconsistent with the allowance of temporary total disability compensation.
Relator is rearguing the same issues that were raised before, and decided by, the magistrate. Dr. Gase, in his August 13, 1998 report, stated that claimant's pain is too severe to allow return to work "until patient receives treatment" and that the claimant would be a candidate for rehabilitation with the goal of returning to work "[i]f he gets treatment for his * * * pain." A reasonable interpretation of the report is that claimant's condition would improve with pain management treatment so that he could return to work and supports the commission's finding that claimant has not reached maximum medical improvement.
As to relator's second objection, the magistrate correctly found that the commission, as fact finder, had some evidence from which it could conclude that claimant was involved in a passive investment based on ownership of rental properties, some of which were acquired before his injury. The photos and videos submitted by relator do not clearly demonstrate that claimant was engaged in activities inconsistent with the allowance of temporary total disability compensation.
Upon a review of the magistrate's decision and an independent review of the file, this court overrules relator's objections and adopts the magistrate's decision as its own. The requested writ of mandamus is denied.
Objections overruled, writ of mandamus denied.
BRYANT and KLATT, JJ., concur.
 IN MANDAMUS
Relator, American Standard, Inc., filed this original action in mandamus asking the court to issue a writ compelling respondent Industrial Commission of Ohio to vacate its order denying termination of temporary total disability ("TTD") compensation and to issue an order terminating TTD.
Findings of Fact:
1. In April 1988, Robert E. Boehler sustained an industrial injury, and his workers' compensation claim was allowed for herniated disc at L5-S1, aggravation of lumbosacral disc disease, major depression, foot drop and cauda equina syndrome.
2. In June 1997, claimant sought reinstatement of TTD compensation, and the commission granted it based on a finding that claimant "is, once again, temporarily and totally disabled." The commission refused further appeal in January 1998.
3. In February 1998, the employer filed a motion asking the commission to terminate TTD based on two separate grounds: that claimant's condition had reached maximum medical improvement ("MMI") and that he was gainfully employed. The employer filed surveillance reports, photographs, a videotape, and a medical report from Richard Kepple, M.D.
4. In May 1998, the employer filed additional evidence and a supplemental motion asking that TTD be terminated retroactively to May 1996 "based on claimant's self-employment since that date." The employer also filed a medical report from S.S. Purewal, M.D., opining that claimant had reached MMI and could return to employment.
5. On August 13, 1998, Andrew Gase, M.D., certified TTD from November 6, 1997 to December 13, 1998. When asked whether the claimant could return to some form of light work, Dr. Gase answered, "No." He explained as follows: "Pain is too severe, chronically, to allow any return to work, until patient receives treatment." When asked whether claimant would be a candidate for rehabilitation focusing on return to work, Dr. Gase responded: "If he gets treatment for his severe neurogenic pain."
6. In October 1998, a hearing was held before a district hearing officer ("DHO"). Claimant testified in regard to his involvement with rental properties he owned. He stated that there were activities every week in connection with the properties. However, he testified that, since the worsening of his condition, he was unable to do the repair and maintenance work he had formerly done, and that he had hired contractors.
An investigator testified that he saw claimant at the properties engaging in the following activities: directing workers where to spread stone, picking up tools and carrying them, passing tools, measuring, pouring paint into a paint sprayer, helping to clean up after painting, helping to cut boards, helping to put paneling in place, carrying power tools into a work area, delivering materials to a work site in a truck, and assisting workers to unload equipment. The investigator testified that, during one week, claimant visited the properties on five consecutive days. In its brief, the employer summarized the evidence regarding claimant's management of the workers as follows: "Claimant often appeared to be directing their hours of work, supervising their work, supplying their tools and materials, and on occasion, directly helping them by sawing, paneling, etc."
7. The DHO concluded that claimant's activities did not constitute employ-ment but were merely supervision of investment property. The hearing officer terminated TTD, however, based on MMI.
8. On appeal, a staff hearing officer modified the DHO order:
 * * * [T]he employer's Motion * * * (which requested an Industrial Commission "order terminating Temporary Total Disability Compensation because claimant is working and earning income in self-employment * * *") is hereby DENIED.
 The employer's reliance on * * * State ex rel. Durant v. Superior's Brand Meats * * * is not well-founded. * * * In the instant claim, Mr. Boehler is merely involved in a passive investment, as the owner of residential and commercial rental property * * *. Claimant owned some of these rental properties prior to the injury allowed in this claim. Prior to the injury, claimant was able to perform maintenance himself. Subsequent to the injury, claimant had to hire independent contractors to perform the work at his rental properties.
 The surveillance video submitted by the employer, as well as the surveillance photos they submitted, do not indicate that claimant was personally performing any work on his rental properties. Instead, they corroborate claimant's testimony that he had hired outside contractors to perform the work and that he was sometimes on the job-site to observe the progress being made or to indicate what he wanted done.
 This Staff Hearing Officer hereby finds that the aforesaid activities by the claimant were reasonable actions by a person who has a substantial capital investment in the form of a passive investment in rental properties and, furthermore, that said activities do not rise to the level [of] self-employment as alleged by the employer. Therefore, it is the specific finding of this Staff Hearing Officer that claimant was NOT engaged in sustained remunerative employment from 5/16/96 through the present.
 * * * [T]ermination of [TTD] due to claimant's alleged self-employment, is hereby DENIED, based upon the reasons previously enumerated above * * *. In regard to the medical evidence, the 7/9/98 report from an orthopedic specialist, S.S. Purewal, M.D., who examined the claimant on behalf of the employer, specifically indicates that he had "reviewed the video tapes that were made on 8/15/97, 2/13/[9]8 and 4/3/98. These tapes show Mr. Boehler moving about with some limp on his right leg which he tends to drag". Doctor Purewal then went on to state that "After reviewing the additional material discussed above, it is my opinion that this patient is not capable of returning to his former position of employment as a tank loader/inspector and this inability is due to the allowed conditions under this _claim."
 This Staff Hearing Officer further makes note of the fact that claimant originally underwent a multiple level lumbar hemi-laminectomy on 4/7/89. Following this surgery, claimant had physical therapy, was rehabilitated and returned to work. Claimant experienced an exacerbation and underwent a fusion on 10/21/92. Again, claimant was rehabilitated and returned to work. He was able to work until March of 1993, when his condition again deteriorated to the point that he was unable to work. He participated in rehabilitation through Healthcare Management Services Plus Division of Gates-McDonald and the Rehabilitation Consultant found the claim-ant to be "very motivated to participate in this rehabilitation program so he can return to work."
 Therefore, this Staff Hearing Officer finds claimant to be a highly motivated individual.
 * * * Andrew J. Gase, M.D., indicates, on the C-84 Attending Physician's Report dated 8/13/98, that claimant has a chronic radiculopathy with foot drop" and "increased pain radiating down left leg and almost entire right leg with right footdrop, unable to sit in chair with legs bent, difficulty raising right knee". Doctor Gase then indicates that the claimant has not reached maximum medical improvement and that claimant is a candidate for vocational rehabilitation "If he gets treatment for his severe neurogenic pain".
 Therefore, * * * the claimant has not yet reached maximum medical improvement.
 Therefore, * * * [TTD] Compensation shall be paid from date last paid * * * and to continue thereafter upon submission of appropriate proof * * *. [Emphasis sic.]
9. The commission refused appeal and reconsideration.
Conclusions of Law:
The employer contends that the commission abused its discretion in finding that claimant had not reached MMI, and in finding that claimant's activities with his properties did not constitute a return to work.
First, under R.C. 4123.56(A), TTD compensation cannot be paid after the condition has become permanent, that is, after the claimant has reached MMI, which is defined as:
 [A] treatment plateau (static or well-stabilized) at which no fundamental functional or physiological change can be expected within reasonable medical probability in spite of continuing medical or rehabilitative procedures. A claimant may need supportive treatment to maintain this level of function. [Ohio Adm. Code 4121-3-32(A)(1)]
This provision distinguishes between medical procedures that may provide "fundamental functional or physiological" improvement and those that do not.
In sum, it is settled that, when medical treatments can provide no further functional or physiological improvement, the claimant has reached MMI and cannot receive further TTD compensation, regardless of whether further medical treatments are "necessary" and payable in the claim. In many cases, medical treatment is necessary to ease pain, but such treatment may, or may not, provide a fundamental functional or physiological improvement. See, e.g., State ex rel. Copeland Corp. v. Indus. Comm. (1990), 53 Ohio St.3d 238, 239; State ex rel. Miller v. Indus. Comm. (1994), 71 Ohio St.3d 229, 232; State ex rel. Overlow v. Indus. Comm. (Apr. 30, 1998), Franklin App. No. 97AP-414, unreported (Memorandum Decision), appeal dismissed, (1998), 83 Ohio St.3d 1405; State ex rel. Evans v. Indus. Comm. (Jan. 26, 1999), Franklin App. No. 97AP-958, unreported (Memorandum Decision).
In the present action, Dr. Gase stated repeatedly that claimant's pain was too severe to allow work "until" he receives treatment. Dr. Gase stated specifically that claimant would be a candidate for returning to work "if he gets treatment" for his severe pain. The commission was within its discretion to interpret these opinions as indicating that pain-management treatment could significantly improve claimant's condition to the point where he could return to work. Because there was medical evidence that further medical treatment could provide functional improvement, the commission was within its discretion to find that MMI had not been reached and to continue TTD compensation.
In regard to the second issue, the employer argues that the commission was required to conclude that claimant's activities with his rental properties constituted gainful employment that precluded receipt of TTD compensation. Under Ohio law, it is settled that a claimant cannot receive TTD compensation while performing gainful work. State ex rel. Blabac v. Indus. Comm. (1999), 87 Ohio St.3d 113; State ex rel. Johnson v. Rawac Plating Co. (1991), 61 Ohio St.3d 599. It does not matter if the number of hours per week is minimal or the pay is nominal. Blabac. It does not matter if the work is occasional or sporadic; the receipt of earned income precludes the receipt of TTD compensation. State ex rel. Durant v. Superior's Brand Meats, Inc. (1994), 69 Ohio St.3d 284.
The courts have rejected the argument that claimants were not engaged in gainful employment when the activities were not physical but merely managerial. E.g., State ex rel. Nahod v. Indus. Comm. (Sept. 2, 1999) Franklin App. No. 98AP-1157, unreported (Memorandum Decision) (denying writ where commission determined that claimant was not only the owner, but also managed and operated the business); State ex rel. Kasler v. Indus. Comm. (Feb. 15, 1996), Franklin App. No. 95APD03-341, unreported (Memorandum Decision) (noting that work need not include physical labor in order to preclude eligibility for TTD). Therefore, the commission may conclude that entrepreneurial activities are gainful employment. Nahod, supra; see, also, State ex rel. Schultz v. Indus. Comm. (Nov. 28, 2000), Franklin App. No. 00AP-166, unreported (Memorandum Decision) (involving permanent total disability).
Nonetheless, earned income is not the same as investment income. See, generally, R.C. Title 57. A claimant is not rendered ineligible for TTD compensation because he receives interest on bank accounts or dividends on stocks. However, investment options range from very passive ones to those that require active monitoring. At some point, the level of active, "hands on" supervision, or participation in the day-to-day affairs of a business (whether physical, clerical and/or cerebral activities), constitutes "gainful employment" that bars receipt of TTD compensation.
In other words, a reasonable amount of monitoring investments does not constitute "employment." An injured worker receiving TTD compensation need not ignore his capital investments and may continue to monitor them while recuperating. On the other hand, involvement in a business to the extent of making sales and/or assisting in operating the business may be viewed as gainful employment depending on all the circumstances. See Nahod, supra; State ex rel. Rousher v. Indus. Comm. (Feb. 2, 2000), Franklin App. 99AP-286, unreported (Memorandum Decision); see, also, Schultz, supra. Overall, the commission must decide whether the claimant's activities were the type of actions that help generate income/gain or whether the type of actions were those of a prudent investor safeguarding his investment.
For example, it appears that an injured worker may continue to spend a few hours a week monitoring his stock portfolio, engaging in activities such as research, buying and selling. However, a worker who spends significant time and effort in buying and selling securities may essentially have developed a part-time job as a securities trader and be ineligible for TTD compensation. Similarly, the owner of a small business may or may not cross the boundary from investment to the realm of gainful employment. For example, if a worker owned a fast-food franchise as an investment, she could probably continue, after becoming injured, to visit the restaurant occasionally, check the books regularly, telephone frequently, etc., without being deemed gainfully "employed" at the restaurant. In contrast, if the owner is essentially operating the business, visiting frequently, doing daily or weekly accounts and check-writing, hiring and training employees, engaging in food preparation, making sales to customers, and acting as an officer of the business rather than a shareholder or silent partner, then the commission has discretion to find that the owner is engaging in gainful employment and may not receive TTD compensation. See, generally, Nahod; Rousher, supra.
These are questions for the commission to resolve. The commission's determination will depend not only on the extent of the activities but also on the nature of the investment, and only an abuse of discretion requires the issuance of a writ.
In the present action, the magistrate finds no abuse of discretion. In essence, the commission found that claimant's pre-injury involvement with the rental properties included two types of activities: (1) working as a repair/remodeling contractor on the buildings, and (2) engaging in general monitoring of the capital investment. The commission essentially concluded that, after the injury, claimant was unable to perform his full-time job at American Standard and unable to perform the part-time repair/remodeling work, but was still able to engage in monitoring his capital investment in real estate. The commission explicitly concluded that the level of supervision of the capital investment was within the boundaries of the reasonable activities of a prudent investor, and did not cross the line to being employed.
The commission's determination was a close call, but it is for the commission to make these close calls, not the court. See State ex rel. Waddle v. Indus. Comm. (1993), 67 Ohio St.3d 452. The employer is correct that there was some evidence on which a finder of fact could conclude that claimant had sufficient hands-on involvement to constitute employment as a part-time manager of rental properties. Nonetheless, the evidence was susceptible of interpretation, and the finder of fact could reasonably determine that claimant was simply monitoring these assets as necessary to protect his capital investment. The commission has exclusive authority to evaluate the weight and credibility of evidence, and the court does not overturn a finding of fact that is supported by "some evidence" in the record, even if other evidence, greater in quantity and/or quality, supports the contrary finding. State ex rel. Pass v. C.S.T. Extraction Co. (1996), 74 Ohio St.3d 373; see, also, State ex rel. Bell v. Indus. Comm. (1995), 72 Ohio St.3d 575, 577 (reiterating that the commission has exclusive authority to evaluate evidentiary weight and credibility).
The magistrate concludes that relator has not met its burden of proof in mandamus. Accordingly, the magistrate recommends that the court deny the requested writ.