DECISION
{¶ 1} Relator, Roger Rollins, commenced this original action requesting a writ of mandamus ordering respondent Industrial Commission of Ohio ("commission") to vacate its order terminating temporary total disability compensation ("TTC") and declaring an overpayment, and to issue an order finding him eligible for TTC.
 {¶ 2} Pursuant to Civ.R. 53 and Loc.R. 12(M) of the Tenth District Court of Appeals, this matter was referred to a magistrate who issued a decision, including findings of fact and conclusions of law. (Attached as Appendix A.) In her decision, the magistrate found that based upon the evidence presented, the commission, as the finder of fact, had discretion to interpret claimant's activities as part-time remunerative employment. Moreover, it is well-established that sporadic, occasional and/or part-time activities for remuneration preclude receipt of TTC.State ex rel. Durant v. Superior's Brand Meats, Inc. (1994),69 Ohio St.3d 284; State ex rel. Blabac v. Indus. Comm. (Mar. 11, 1997), Franklin App. No. 95APD11-1415 (Memorandum Decision), affirmed (1999), 87 Ohio St.3d 113. Therefore, the magistrate has recommended that the requested writ of mandamus be denied.
 {¶ 3} Relator has filed objections to the magistrate's decision, arguing that there are factual differences between the cases relied upon by the magistrate and the case at bar. We agree that the facts presented here are different from those involved in the cases relied upon by the magistrate. Nevertheless, the principle of law relied upon by the magistrate supports the denial of the writ of mandamus.
 {¶ 4} For the reasons cited in the magistrate's decision, the commission had discretion to conclude that the weekly payments to relator were not gifts but, rather, remuneration for services rendered by a part-time pastor. Therefore, receipt of TTC was precluded. Therefore, relator's objections are overruled.
 {¶ 5} Following an independent review of this matter, we find that the magistrate has properly determined the pertinent facts and applied the appropriate law. Therefore, we adopt the magistrate's decision as our own, including the findings of fact and conclusions of law contained therein. In accordance with the magistrate's recommen-dation, we deny the requested writ of mandamus.
Objections overruled; writ of mandamus denied.
Lazarus, P.J., and Sadler, J., concur.
 APPENDIX A IN THE COURT OF APPEALS OF OHIO TENTH APPELLATE DISTRICT State of Ohio ex rel. : Roger Rollins, : :
Relator, : :
: v. : No. 03AP-444 :
: Industrial Commission of Ohio : (REGULAR CALENDAR) and Central Erie Supply Elevator, : Respondents. :
 MAGISTRATE'S DECISION Rendered on October 9, 2003 Calhoun, Kademenos, Heichel, Childress Spon, LPA, andChristopher S. Clark.
 Jim Petro, Attorney General, and Phil Wright, Jr., for respondent Industrial Commission of Ohio.
 IN MANDAMUS {¶ 6} In this original action in mandamus, relator, Roger Rollins, asks the court to issue a writ compelling respondent Industrial Commission of Ohio ("commission") to vacate its order terminating temporary total disability compensation ("TTC") and declaring an overpayment, and to issue an order finding him eligible for TTC.
 Findings of Fact {¶ 7} 1. In February 1994, Roger Rollins ("claimant") sustained an industrial injury while working for Central Erie Supply and Elevator ("Erie Supply"). He was awarded TTC based on his medical inability to return to his duties at Erie Supply.
 {¶ 8} 2. However, claimant was able to continue as pastor of the Bellevue Missionary Baptist Church. Claimant stated that he began serving as the church's pastor in 1991. He held three services per week, one on Wednesday nights and two on Sundays, a morning and evening service. The services generally lasted about an hour. Claimant avers in his brief that his preparation time for each service was minimal.
 {¶ 9} 3. Claimant received $60 per week from the church, which was paid by check. The checks noted that the money was a "love offering" to claimant. As of March 1995, claimant began receiving $70 per week from the church. He sometimes received an extra amount, such as a "Christmas love offering" of $300 in December 1995.
 {¶ 10} 4. In June 1996, the Ohio Bureau of Workers' Compensation ("bureau") received information that claimant was employed while receiving TTC, and it investigated. Claimant readily admitted that he received the money but stated that his service to the church was not employment, that he was just serving God. He said he had been the pastor before the injury and simply continued to serve his church after his injury. He explained that, during a church service, he would read a passage from the Bible and then explain or preach whatever God placed in his heart, which was not a job but a privilege. A member of the church stated that there was no job description or job application — that the entire church prayed and then chose a pastor.
 {¶ 11} 5. The bureau filed a motion asking the commission to terminate TTC and declare an overpayment from March 5, 1994 through August 22, 1996. The bureau did not seek a finding of fraud.
 {¶ 12} 6. A district hearing officer denied the motion, but a staff hearing officer in June 1998 granted it, as follows:
* * * [C]laimant, Roger Rollins, previously collected temporary total disability compensation from March 5, 1994 through August 22, 1996.
It is the further finding of this Staff Hearing Officer that claimant, Roger Rollins, received weekly checks, beginning February 6, 1994, in the amount of $60.00 per week for employment as a pastor at the Bellevue Missionary Baptist Church, Route 269, Bellevue, Ohio 44811. Claimant's weekly pay was then raised to $70.00 per week from 3/26/95 through 6/21/97.
The temporary total disability compensation checks that claimant received contained in the following notice and warning:
 "NOTICE — READ BEFORE SIGNING
WARNING — Under Ohio Law if you endorse this check in the name of the payee and you are not the payee, you may go to jail for five years and be fined $2,500. If this check is to compensate you for total disability, you are not entitled to it if you are working. Therefore, you should return it to the BWC immediately."
However, claimant continued to cash the Workers' Compensation Temporary Total Disability Compensation checks from 3/5/94 through 8/22/96, while receiving remuneration from Bellevue Missionary Baptist Church for services performed over the same period.
Therefore, it is the order of this Staff Hearing Officer that an overpayment is hereby declared for all temporary total disability compensation previously paid from March 5, 1994 through August 22, 1996 as claimant was working for Bellevue Missionary Baptist Church and receiving re-muneration for said work.
Therefore, claimant was not entitled to the payment of temporary total disability compensation for said period.
This order is based upon the Bureau of Workers' Compensation Special Investigations Case Summary dated 8/26/97.
(Emphasis sic.)
 Conclusions of Law {¶ 13} Claimant contends that the commission abused its discretion in finding he was not entitled to TTC from March 5, 1994 through August 22, 1996. Claimant asserts that he was not engaged in remunerative employment.
 {¶ 14} First, it is well established that a claimant cannot receive TTC while receiving remuneration for work activities, including part-time or occasional activities. E.g., State exrel. Durant v. Superior's Brand Meats, Inc. (1994),69 Ohio St.3d 284; State ex rel. Johnson v. Rawac Plating Co. (1991),61 Ohio St.3d 599; State ex rel. Blabac v. Indus. Comm. (Mar. 11, 1997), Franklin App. No. 95APD11-1415, affirmed (1999),87 Ohio St.3d 113; State ex rel. Nye v. Indus. Comm. (1986),22 Ohio St.3d 75. The question as to whether claimant was engaged in remunerative employment is a question of fact for the commission to determine. Greathouse v. Indus. Comm. (Dec. 7, 1993), Franklin App. No. 92AP-1390.
 {¶ 15} Even when remuneration is nominal or the hours of work are minimal, the remuneration precludes receipt of TTC. SeeDurant; Blabac, supra. In Durant, the injured worker was awarded TTC because she was unable to perform the job at which she was injured. However, before the injury, claimant had earned commissions in a sales distributorship from her home, and she continued to earn some commissions while disabled from her regular job. The claimant argued that these small commissions did not preclude TTC because the hours of work were limited and the earnings were low. The Ohio Supreme Court disagreed, stating that the remunerative activities precluded TTC.
 {¶ 16} Likewise, in Blabac, supra, the claimant emphasized that the hours and pay were minimal. While receiving TTC, he helped to teach a scuba class once a week simply for "personal satisfaction" and earned only a few dollars after expenses. He also asserted that his physical activities were very limited while teaching, that he merely sat by the pool with a clipboard while another instructor was in the pool. However, the court of appeals rejected claimant's argument that his earnings "were only nominal and that `nominal' income is insufficient to preclude payment of temporary total disability compensation." The Ohio Supreme Court affirmed.
 {¶ 17} In Johnson, supra, the claimant worked full-time at a metals plant and also had a part-time job as a janitor. After he was injured at the plant, he could not return to those duties but was able to continue the janitorial duties. The court found that the claimant could not receive TTC while continuing to receive remuneration for his part-time employment.
 {¶ 18} In addition, the magistrate notes that the concept of "work" or "employment" is not limited to strenuous activities or manual labor. Sedentary and cerebral activities preclude TTC if remuneration is received. See, generally, State ex rel. Kaslerv. Indus. Comm. (Feb. 15, 1996), Franklin App. No. 95AP-341;State ex rel. Nahod v. Indus. Comm. (Sept. 2, 1999) Franklin App. No. 98AP-1157.
 {¶ 19} Of course, the law does not preclude a TTC recipient from having personal investments and giving reasonable attention to them. See State ex rel. Ackerman v. Indus. Comm.,99 Ohio St.3d 26, 2003-Ohio-2448 (noting that the mere fact of business ownership, without more, does not defeat eligibility for permanent total compensation). In cases involving TTC, the courts have recognized that, where the injured worker had a preexisting business to which he gave substantial labor and supervision before the injury, and where he was forced to hire laborers to replace his physical contribution during his recuperation, the claimant may engage in some supervisory activities to preserve his business while receiving TTC. State ex rel. Ford Motor Co.v. Indus. Comm., 98 Ohio St.3d 20, 2002-Ohio-7038; see, also,State ex rel. Am. Std., Inc. v. Boehler, Franklin App. No. 01AP-1138, 2002-Ohio-3323.
 {¶ 20} Similarly, in some circumstances, an injured worker may donate his efforts to a charitable cause without losing eligibility for TTC. In State ex rel. Parma Community Gen. Hosp.v. Jankowski, 95 Ohio St.3d 340, 2002-Ohio-2336, the Ohio Supreme Court addressed the question of whether an injured worker's charitable work on a volunteer basis renders the worker ineligible for receipt of TTC. While the claimant was recovering from an injury that prevented her from returning to her nursing job, she began working as a volunteer at a child-advocacy agency, answering telephones and providing information to clients. An investigation revealed no evidence that the claimant had ever received wages "or any other remuneration" for her activities. Id. at ¶ 4. The agency stated that it had never issued a check to her. Further, claimant testified that she had recently completed training for office work and had felt that office experience as a volunteer would assist her transition to new work.
 {¶ 21} The court found that claimant's activities, although performed in a work-place environment, did not constitute employment that would render her ineligible to receive TTC for two reasons: the activities were not inconsistent with her claimed medical incapacities, and there was no evidence of remuneration. The court stated that, where there is no outside remuneration to reduce or eliminate the loss of wages from the injury, the payment of TTC is proper. In contrast, receiving TTC while receiving outside remuneration for work activities is inappropriate.
 {¶ 22} Further, the court observed that a rule prohibiting volunteer work could result in unduly harsh situations, such as barring an injured worker from babysitting her grandchildren or mowing her own lawn, where such activities were consistent with the claimed medical restrictions. Moreover, prohibiting volunteer work would prevent injured workers from participating in unpaid internships and programs that could provide skills and valuable experience. The court concluded that, even if an injured worker performs services in a workplace for which others may be paid, the services do not constitute "employment" precluding receipt of TTC where no remuneration was received.
 {¶ 23} Based on these authorities and the record before the court, the magistrate concludes that the commission as the finder of fact had discretion to interpret claimant's activities as part-time, remunerative employment. The magistrate rejects claimant's argument that his activities as church pastor cannot constitute employment as a matter of law because he performed the activities for only a few hours per week and earned less than $100 per week. The court stated in Durant and Blabac that sporadic, occasional, and part-time activities for remuneration would preclude receipt of TTC. If teaching one class per week was sufficient to constitute employment in Blabac, then three church services per week was sufficient to constitute employment in this case.
 {¶ 24} Second, the magistrate rejects the argument that the church services were not "employment" because claimant felt privileged to serve and his hours of service were a joyful offering to his God and to his religious community. The magistrate finds these beliefs and sentiments admirable. However, a special exception for those who are doing work they love or work that benefits the community would be improper. Many teachers, social workers, legal advocates, clergy and other persons view their work as an important mission that they gladly pursue despite low pay, but such workers should not have special permission to receive outside remuneration during temporary total disability that is denied to those who perform work they do not like. In Blabac, the claimant argued that he taught one class per week purely for personal satisfaction. Similarly, in Stateex rel. Rousher v. Indus. Comm. (Feb. 3, 2000), Franklin App. 99AP-286, the claimant insisted that his involvement with buying and selling matchbooks was not work but an enjoyable hobby for him as a collector, and that any financial returns simply served to fund his hobby; nonetheless, the court upheld the commission's determination that the claimant was engaging in occasional, remunerated employment. Accordingly, the magistrate concludes that the admirable nature of a work activity, or the fact that the person thoroughly enjoys performing it, does not bar the commission from concluding that remunerated services were "employment" or "work" for purposes of TTC termination and overpayment.
 {¶ 25} Third, claimant argues that his service as a pastor was essentially a charitable activity. The magistrate concludes that, based on the record, including claimant's statements and the statements of church members, the commission as the finder of fact could have given credence to claimant's assertions that he was merely donating his time with no expectation of remuneration. See, generally, State ex rel. Teece v. Indus. Comm. (1981),68 Ohio St.2d 165 (stating that questions of credibility and the weight to be given evidence are within the commission's discretionary powers of fact-finding); State ex rel. Bell v.Indus. Comm. (1995), 72 Ohio St.3d 575, 577 (reiterating that the commission has exclusive authority to evaluate evidentiary weight and credibility); State ex rel. Pass v. C.S.T. ExtractionCo. (1996), 74 Ohio St.3d 373 (stating that the commission alone is responsible for evaluating evidentiary weight and credibility). However, the commission also had discretion to reject claimant's interpretation of the evidence and to conclude that the weekly payments to claimant were not mere gifts but were remuneration for services rendered by a part-time pastor.
 {¶ 26} Given the regular timing of the checks and the regular amount of the checks over several years, together with the regular performance of preaching duties, the commission was within its discretion to conclude that the weekly checks and occasional bonuses were remuneration for part-time employment. The commission made a specific finding that from March 5, 1994 through August 22, 1996, claimant was "receiving remuneration
from Bellevue Missionary Baptist Church for services performed
over the same period." (Emphasis added.) Thus, the commission rejected claimant's argument that he merely performed volunteer work and that the weekly payments were merely gifts prompted by the love between the parties involved. The magistrate concludes that the commission had discretion as the finder of fact to reject claimant's interpretation of the evidence and to conclude that the monies received by claimant were remuneration for services performed.
 {¶ 27} Moreover, with respect to claimant's legal argument that the commission was required as a matter of law to conclude that his pastoral activities were not employment — that his activities were voluntary and that the church's payments to him were voluntary gifts rather than compensation — the magistrate was guided by the Jankowski decision regarding volunteer activities. There, the court held that volunteer activities do not constitute employment barring TTC where the injured worker does not receive any remuneration. In contrast, claimant in the present action received a weekly amount of money. Although claimant insists in his brief that he expected no regular payment from the church, the fact of regular weekly payments of a set amount over the course of years could be interpreted by the commission as indicating that the claimant was being compensated for services rendered.
 {¶ 28} Fourth, the magistrate considers the applicability of the ruling in Ford Motor, in which the court recognized that an injured worker was not required to abandon a preexisting business during his recuperation from injury. The court ruled that, where the claimant contributed substantial physical labor to his business before the injury and where his physical contribution was curtailed by the allowed conditions, forcing him to hire workers to replace his labor while recovering, the claimant could engage in some managerial activities to keep the business going while he recovered. In Ford Motor, the court stated:
{¶ 19} Work is not defined for workers' compensation purposes. We have held, however, that any remunerative activity outside the former position of employment precludes TTC. State ex rel. Nyev. Indus. Comm. * * * We have also held that activities medically inconsistent with the alleged inability to return to the former position of employment bar TTC, regardless of whether the claimant is paid. State ex rel. Parma Community Gen. Hosp.v. Jankowski * * *. Activities that are not medically inconsistent, however, bar TTC only when a claimant is remunerated for them. Id. * * * Work, moreover, does not have to be full-time or even regular part-time to foreclose TTC; even sporadic employment can bar benefits. State ex rel. Blabac v.Indus. Comm. * * *
{¶ 20} * * * In Blabac, the claimant, John Blabac, was getting TTC when it was discovered that he was earning wages as a scuba diving instructor. While his partner did the physical instruction, Blabac sat at poolside with a clipboard, grading the students. * * *
{¶ 21} * * * Blabac argued that only "substantially gainful" work could bar TTC, and that his work was neither substantial nor gainful. We disagreed with Blabac, holding that low paying and sporadic employment was still work. Because Blabac was paid for his efforts, we determined that they constituted work, and barred TTC. We suggested that wage-loss compensation would have been more appropriate for Blabac's circum-stances.
* * *
{¶ 23} * * * Unlike the claimants in Blabac, Nye, State exrel. Johnson v. Rawac Plating Co. * * * and State ex rel. Durantv. Superior's Brand Meats, Inc. * * * this claimant's activities * * * produced money only secondarily, e.g., claimant signed the paychecks that kept his employees doing the tasks that generated income.
{¶ 24} Obviously, application of this rationale must be applied on a case-by-case basis and only when a claimant's activities are minimal. A claimant should not be able to erect a façade of third-party labor to hide the fact that he or she is working. In this case, however, claimant's activities were truly minimal and only indirectly related to generating income. * * *
(Emphasis sic.)
The magistrate notes that, in both Ford Motor and Boehler, supra, the claimant's contribution of labor to the business was substantially diminished after his industrial injury, and each claimant was forced to hire laborers to replace much or most of his former contribution to the business. In other words, the injured worker's overall participation in the enterprise was substantially reduced. In addition, both decisions suggest the courts' awareness of the practical necessity that, when the owner of a small business is injured during employment for an outside employer, his business may fail and the investment may be lost if he cannot give some attention to its preservation while recuperating from his industrial injury. Further, Ford Motor
and Boehler were both cases involving "third-party labor," that is, cases involving continuation of some managerial tasks while hiring replacement workers for the physical labor.
 {¶ 29} In the present action, there was no evidence of third-party labor to replace most of claimant's services to the organization. There was no evidence that claimant's activities as pastor were substantially reduced during the time he was receiving TTC and that he maintained only a minimal supervision to keep the enterprise going during his recovery. The holdings inFord Motor and Boehler do not apply to the present action.
 {¶ 30} The magistrate recognizes that this result may seem harsh. However, the result here is no more harsh than in Blabac,Johnson, or Durant. Also, the magistrate notes that the appropriate remedy for claimant in the present case may have been wage-loss compensation rather than TTC, as the court noted inBlabac.
 {¶ 31} Moreover, in reaching the conclusion that a writ is not warranted, the magistrate has relied on relator's burden of proof in mandamus. The role of the court in a mandamus action is limited, and a commission order supported by evidence in the record must be upheld. E.g., Teece; Bell, supra. In order for this court to grant a writ of mandamus, claimant must demonstrate that he had a clear legal right to TTC or a clear legal right to further explanation from the commission. E.g., State ex rel.Pressley v. Indus. Comm. (1967), 11 Ohio St.2d 141; State exrel. Mitchell v. Robbins Myers, Inc. (1983), 6 Ohio St.3d 481. The magistrate concludes that claimant has not met his burden of proof in this action and, therefore, recommends that the court deny the requested writ of mandamus.