DECISION
{¶ 1} Relator, Daryl Streety, has filed this original action requesting that this court issue a writ of mandamus ordering respondent, Industrial Commission of Ohio ("commission"), to vacate its order that found his receipt of temporary total disability ("TTD") compensation from November 1, 2003 through December 8, 2004 was improper due to fraud based upon a finding that relator was engaged in remunerative work activity during that time.
 {¶ 2} This matter was referred to a court-appointed magistrate pursuant to Civ.R. 53(C) and Loc.R. 12(M) of the Tenth District Court of Appeals. The magistrate issued a decision, including findings of fact and conclusions of law, and recommended that this court deny relator's request for a writ of mandamus. (Attached as Appendix A.) Relator has filed objections to the magistrate's decision.
 {¶ 3} Relator presents no new arguments in his objections that were not addressed by the magistrate. Relator argues in his first objection that the order of the commission's staff hearing officer ("SHO") was not supported by evidence because it did not cite to or base its decision on any evidence and was merely a conclusion without analysis. However, as the magistrate found, the SHO's order was a modification of the district hearing officer's ("DHO") order, which did specifically cite the evidence upon which the DHO relied, and the two orders must be read together.
 {¶ 4} Relator argues in his second objection that the magistrate's decision was factually inaccurate in concluding that there was no evidence that he was TTD for the period after his cervical fusion. However, what the magistrate meant by finding that there was no evidence to support TTD after the surgery was that there was no reliable evidence to support such, because the two doctors who submitted medical reports to support TTD based their analyses on incorrect information. Dr. Juan Hernandez certified TTD for a period when relator had, in fact, been working for Orban's Flowers, thereby rendering his certification unreliable for the period after surgery. Similarly, Dr. Cyril Marshall's office notes indicate he believed relator had last worked July 2003, which, again, the commission concluded was untrue. We also note that nothing in the record from Dr. Marshall cited by relator specifically refers to relator's TTD for the particular period immediately post-surgery. Thus, because the doctors based their conclusions on incorrect information, the commission could have found their reports unreliable as to all periods, including that period immediately post-surgery. Therefore, relator's objections are overruled.
 {¶ 5} After an examination of the magistrate's decision, an independent review of the evidence pursuant to Civ.R. 53, and due consideration of relator's objections, we overrule the objections and find that the magistrate sufficiently discussed and determined the issues raised. Accordingly, we adopt the magistrate's decision as our own, including the findings of fact and conclusions of law contained in it, and deny relator's request for a writ of mandamus.
Objections overruled; writ denied.
Klatt, P.J., and Travis, J., concur.
 APPENDIX A IN THE COURT OF APPEALS OF OHIO TENTH APPELLATE DISTRICT
The State of Ohio on Relation : of Daryl Streety, : :
Relator, : :
v. : No. 05AP-637 :
Hill Crest Egg Cheese Co. and : (REGULAR CALENDAR) The Industrial Commission of Ohio, : Respondents. :
 MAGISTRATE'S DECISION Rendered on January 24, 2006 Shapiro, Marnecheck Reimer, Philip A. Marnecheck andMatthew A. Palnik, for relator.
Jim Petro, Attorney General, and Sue A. Zollinger, for respondent Industrial Commission of Ohio.
 IN MANDAMUS {¶ 6} Relator, Daryl Streety, has filed this original action requesting that this court issue a writ of mandamus ordering respondent Industrial Commission of Ohio ("commission") to vacate its order which found that his receipt of temporary total disability ("TTD") compensation from November 1, 2003 through December 8, 2004 was improper based upon a finding that relator was engaged in remunerative work activity during that time. Relator contends there is not "some evidence" in the record to support the commission's decision and its finding of fraud and requests that this court issue a writ of mandamus ordering the commission to vacate that order.
Findings of Fact:
 {¶ 7} 1. Relator sustained a work-related injury on August 26, 1999, and his claim has been allowed for "sprain lumbar region, sprain of neck; C3-4, C5-6 disc herniation and spinal stenosis at C5-6."
 {¶ 8} 2. Relator submitted a C-84 motion dated October 31, 2003, wherein his treating physician Juan Hernandez, M.D., certified that he was temporarily and totally disabled from November 1, 2003, to an estimated return-to-work date of January 1, 2004. Dr. Hernandez listed the conditions of cervical and lumbar sprain as a disabling condition and, within the same C-84 motion, relator sought to have his claim additionally allowed for C3-4 disc herniation, C5-6 disc herniation, and spinal stenosis at C5-6.
 {¶ 9} 3. Relator's motion was heard before a district hearing officer ("DHO") on February 2, 2004, and resulted in an order granting the motion in its entirety. As such, relator's claim was additionally allowed for the three requested conditions and TTD compensation was ordered paid from November 1, 2003 through February 29, 2004.
 {¶ 10} 4. On February 10, 2004, the Ohio Bureau of Workers' Compensation ("BWC") special investigations unit received an allegation that relator was working for Orban's Florist making deliveries while receiving TTD compensation. The investigators conducted their investigation and reported, in relevant part, the following: Surveillance was conducted on March 24, 2004, and relator was observed driving an Orban's Florist delivery van; the owners of Orban's Florist were interviewed and acknowledged that relator had been working for them in a part-time capacity as an emergency employee filling in for injured workers and working on busy holidays for the past three years; relator was paid $8 an hour and was paid in cash unless he worked for three days in a row; although relator did not clock in to work, Edward Wrobel, one of the owners of Orban's Florist, reconstructed relator's work hours for 2003 and 2004; according to Wrobel's reconstruction, relator worked on ten different days in 2003, for 123 hours, and was paid $1,025, while for the year 2004, relator worked on seven different dates, for 82.5, and was paid $866; when relator was interviewed, he did admit that he was paid some money for driving a van to make deliveries for Orban's Florist but indicated that he did not consider that to be work.
 {¶ 11} 5. Based upon the evidence collected, the BWC filed a motion requesting that the commission find that TTD compensation had been overpaid beginning November 1, 2003, and further asked that the commission make a finding of fraud.
 {¶ 12} 6. The motion was heard before a DHO on December 8, 2004, and resulted in an order granting the BWC's motion. The commission's finding that relator worked during the period in question was addressed as follows in the DHO's order:
The District Hearing Officer's finding that injured worker "worked" during a period of time in which he received temporary total disability compensation is based on the Memorandum of Interview noted in number 1 above, and the testimony of Ms. Diane Plunkett, who was present during these instances of "work". Although the injured worker may have worked only "occasionally", he nonetheless worked repeatedly. He also had any number of opportunities to obtain clarification of the issue if he was unsure of whether his actions actually rose to the level of "work" that is prohibited on the signature page of the Form C-84 and the Authorization for Direct Deposit. For example, before submitting any one of the multiple C-84s, or when speaking with Mary Manderson on the telephone regarding the Direct Deposit authorization, clarification could have been sought. In addition, injured worker was represented by competent counsel during this period. The facts support the finding that, although injured worker could have sought clarification of the issue, he chose not to.
 {¶ 13} 7. Relator appealed and the matter was heard before a staff hearing officer ("SHO") on March 10, 2005. The SHO modified the prior DHO's order relative to the DHO's statements concerning fraud but made no changes relative to the DHO's finding that relator had worked during the relevant time period. The SHO's order provided, in relevant part, as follows:
The Staff Hearing Officer finds that, the claimant was over-paid Temporary Total Disability Compensation beginning 11/01/2003 to date as the claimant worked while collecting said benefits. Further, the Staff Hearing Officer finds that, the claimant by his actions has perpetrated a fraud and, therefore, a finding of FRAUD is made herein. The Staff Hearing Officer finds that, the evidence herein provide by the BWC establishes that, the claimant did knowingly conceal that he was working with the intent of the BWC relying upon such falsehood and paying him benefits to which he was otherwise not entitled, to wit, temporary total disability compensation. The Staff Hearing Officer further finds that, the BWC's reliance upon the false statements of the claimant was justifiable, claimant having been repeatedly informed that working and collecting temporary total disability compensation benefits was prohibited. The aforesaid overpayment is to be recouped from the claimant pursuant to the fraud section of O.R.C. 4123.511.
(Emphasis sic.)
 {¶ 14} 8. Relator's appeal was refused by order of the commission mailed April 9, 2005.
 {¶ 15} 9. Thereafter, relator filed the instant mandamus action in this court.
Conclusions of Law:
 {¶ 16} In order for this court to issue a writ of mandamus as a remedy from a determination of the commission, relator must show a clear legal right to the relief sought and that the commission has a clear legal duty to provide such relief. Stateex rel. Pressley v. Indus. Comm. (1967), 11 Ohio St.2d 141. A clear legal right to a writ of mandamus exists where the relator shows that the commission abused its discretion by entering an order which is not supported by any evidence in the record.State ex rel. Elliott v. Indus. Comm. (1986), 26 Ohio St.3d 76. On the other hand, where the record contains some evidence to support the commission's findings, there has been no abuse of discretion and mandamus is not appropriate. State ex rel. Lewisv. Diamond Foundry Co. (1987), 29 Ohio St.3d 56. Furthermore, questions of credibility and the weight to be given evidence are clearly within the discretion of the commission as fact finder.State ex rel. Teece v. Indus. Comm. (1981), 68 Ohio St.2d 165.
 {¶ 17} In this mandamus action, relator makes the following arguments: (1) his activities did not constitute "work" and should not have precluded him from receiving TTD compensation; (2) the commission abused its discretion by declaring an overpayment for the period after May 11, 2004, because relator had surgery relative to the allowed conditions in the claim; and (3) the commission's decision to declare fraud and an overpayment is against public policy. For the reasons that follow, the magistrate rejects relator's arguments and finds the commission did not abuse its discretion.
 {¶ 18} In State ex rel. Ford Motor Co. v. Indus. Comm.
(1992), 65 Ohio St.3d 17, at ¶ 18-19, the Supreme Court of Ohio summarized the law pertinent to this action. The Ford court stated as follows:
TTC is prohibited to one who has returned to work. R.C.4123.56(A); State ex rel. Ramirez v. Indus. Comm. (1982),69 Ohio St.2d 630 * * *. At issue is whether claimant's activities for Nature's Creations constitute work. For the reasons that follow, we find that they do not.
Work is not defined for workers' compensation purposes. We have held, however, that any remunerative activity outside the former position of employment precludes TTC. State ex rel. Nye v.Indus. Comm. (1986), 22 Ohio St.3d 75, 78 * * *. We have also held that activities medically inconsistent with the alleged inability to return to the former position of employment bar TTC, regardless of whether the claimant is paid. State ex rel. ParmaCommunity Gen. Hosp. v. Jankowski, 95 Ohio St.3d 340,2002-Ohio-2336, * * * ¶ 15. Activities that are not medically inconsistent, however, bar TTC only when a claimant is remunerated for them. Id. at ¶ 14-15 * * *. Work, moreover, does not have to be full-time or even regular part-time to foreclose TTC; even sporadic employment can bar benefits. State ex rel.Blabac v. Indus. Comm. (1999), 87 Ohio St.3d 113 * * *.
 {¶ 19} In the Ford case, the claimant, Christopher Posey, held two jobs concurrently: one with Ford Motor Company, and the other was his own lawn care business. From 1994 through 1996, Posey was the sole employee of his lawn care business. In 1997, he hired another employee.
 {¶ 20} In 1998, Posey injured his neck while working at Ford. Posey's injury forced him to stop his physical participation in his lawn care business. As a result, he hired three additional employees. The injury also temporarily forced Posey from his job at Ford and he received TTD compensation from June through September 8, 1998.
 {¶ 21} Ford later sought to recoup TTD compensation alleging that Posey's participation in his lawn care business constituted work and, therefore, prohibited the receipt of TTD compensation. Evidence presented regarding Posey's participation in his business, however, established only that Posey signed workers' paychecks and fueled and drove riding lawnmowers onto a truck. Surveillance of Posey by Ford supported Posey's contention that he did no landscaping work in connection with his business while receiving TTD compensation.
 {¶ 22} The commission refused Ford's request to declare an overpayment. Ford filed a mandamus action and the commission's decision was upheld. The Ford court, at ¶ 20-24, explained:
Ford asserts that [State ex rel. Blabac v. Indus. Comm.
(1999), 87 Ohio St.3d 113] is controlling and bars TTC here. InBlabac, the claimant, John Blabac, was getting TTC when it was discovered that he was earning wages as a scuba diving instructor. While his partner did the physical instruction, Blabac sat at poolside with a clipboard, grading the students. Id. at 113 * * *. Whether he lectured, prepared or graded written exams, or otherwise instructed students was not known.
The commission terminated TTC and declared an over-payment. Blabac argued that only "substantially gainful" work could bar TTC, and that his work was neither substantial nor gainful. We disagreed with Blabac, holding that low paying and sporadic employment was still work. Because Blabac was paid for his efforts, we determined that they constituted work, and barred TTC. We suggested that wage-loss compensation would have been more appropriate for Blabac's circumstances.
Ford argues that under Blabac, any work precludes TTC and asserts that Blabac forbids TTC here. Ford, however, overlooks the distinction between this case and Blabac. Blabac never disputed that his actions constituted work. He argued instead that he had not worked enough to prevent TTC. Claimant herein, on the other hand, argues that his activities were not work, rendering Blabac off point.
Claimant's assertion has merit. Unlike the claimants inBlabac, Nye, State ex rel. Johnson v. Rawac Plating Co. (1991),61 Ohio St.3d 599, * * * and State ex rel. Durant v. Superior'sBrand Meats, Inc. (1994), 69 Ohio St.3d 284, * * * this claimant's activities did not, in and of themselves, generate income; claimant's activities produced money only secondarily, e.g., claimant signed the paychecks that kept his employees
doing the tasks that generated income.
Obviously, application of this rationale must be applied on a case-by-case basis and only when a claimant's activities are minimal. A claimant should not be able to erect a facade of third-party labor to hide the fact that he or she is working. In this case, however, claimant's activities were truly minimal and only indirectly related to generating income. * * *
(Emphasis sic.)
 {¶ 23} More recently, in State ex rel. Am. Std., Inc. v.Boehler, 99 Ohio St.3d 39, 2003-Ohio-2457, the Supreme Court of Ohio again considered the issue. In Boehler, the claimant, Robert Boehler, also held two jobs concurrently: one with American Standard and the other was his own rental property business. Boehler testified that every week there were activities in connection with the properties, but that since the worsening of his condition, he had been unable to do any of the repair and maintenance work he had formerly done and had hired contractors to do that work. An investigator testified that he saw Boehler at the properties engaging in the following activities: directing workers, picking up tools and carrying them, passing tools, measuring, pouring paint into a paint sprayer, helping to clean up after painting, helping cut boards and paneling placement, delivering materials to a work site in a truck, and assisting workers to unload equipment.
 {¶ 24} The commission concluded that Boehler's activities did not constitute employment but were merely supervision of investment property. The commission determined that the activities of Boehler were reasonable actions of a person who has a substantial capital investment in the form of a passive investment in rental properties and that such activity did not rise to a level of self-employment as alleged.
 {¶ 25} The Boehler court stated, at ¶ 20-26, as follows:
TTC compensates for the loss of earnings a claimant sustains while his or her injury heals. State ex rel. Ashcraft v. Indus.Comm. (1987), 34 Ohio St.3d 42, 44 * * *. This means that TTC is precluded when the claimant begins to earn again, i.e., when he or she is paid money in direct exchange for labor. State ex rel.Ford Motor Co. v. Indus. Comm., 98 Ohio St.3d 20,2002-Ohio-7038, * * * supports this, by refusing to disqualify claimants whose activities "produced money only secondarily" or were "only indirectly related to generating income." Id. at ¶ 23 and 24.
The disputed amount in this case was not given in exchange for claimant's labor — it was paid pursuant to a contractual rental agreement. Certainly it can be argued that if claimant's apartments were not kept up, rental income could evaporate. There are, however, two key flaws in this logic. First, it runs counter to Ford. There, claimant's industrial injury not only removed him from his former job but also kept him from his side business of mowing lawns. Claimant was forced to hire others to do this work and paid them accordingly. Ford argued that claimant's act of signing payroll checks to these workers constituted "work" so as to foreclose TTC. We disagreed, writing that "this claimant's activities did not, in and of themselves, generate income; claimant's activities produced money only secondarily, e.g., claimant signed the paychecks that kept his employees doing the tasks that generated income." (Emphasis sic.) Id. at ¶ 23.
In the case before us, rental upkeep generated income secondarily. It was the contractual relationship between claimant and his tenants that directly compelled the payment of money. It was not directly generated by the claimant's labor.
Second, American Standard confuses the concept of remuneration with claimant's physical presence at the rental site. If claimant had never visited his properties and had never participated in their rental or upkeep, leaving those tasks to others, claimant would still have received his rental income. Few would argue that in such a case, TTC would be precluded. This indeed suggests that the pivotal point of American Standard's position is claimant's physical presence at the rental units. Nothing, however, prevents claimant from going there. The only thing that is barred is claimant's participation in any activities that are medically inconsistent with his allegation of an inability to return to his former position of employment or that directly generate income, and there is evidence of neither here.
Ford acknowledged the perils of situations such as that at issue, cautioning that "this rationale must be applied on a case-by-case basis and only when a claimant's activities are minimal. A claimant should not be able to erect a facade of third-party labor to hide the fact that he or she is working." Id., 98 Ohio St.3d 20, 2002-Ohio-7038, * * * at ¶ 24.
(Emphasis sic.)
 {¶ 26} Relator argues that the application of the court's reasoning from Ford and its progeny should result in his being permitted to continue to receive TTD compensation, in spite of his activities at Orban's Florist, because his activities there were minimal and did not constitute work. Relator contends that he expended truly minimal effort driving the delivery van while someone else made the deliveries and that the small amount of money he earned should not have precluded his receipt of TTD compensation.
 {¶ 27} Upon review of the case law in this area, this magistrate specifically notes that the Supreme Court of Ohio has consistently made a distinction between injured claimants who, at the time of their injuries, owned their own businesses and continued to operate those businesses after their industrial injuries and claimant's who sought out other employment following an industrial injury which removed them from their former position of employment. When other employment is sought, even when remuneration is nominal or the hours of work are minimal, the remuneration precludes the receipt of TTD compensation.
 {¶ 28} In State ex rel. Blabac v. Indus. Comm. (1999),87 Ohio St.3d 113, while receiving TTD compensation, the claimant helped teach a scuba class once a week for his own personal satisfaction. The claimant earned only a few dollars after expenses. The claimant also asserted that his physical activities were very limited while teaching, that he merely sat by the pool with a clipboard while another instructor was in the pool. However, the court rejected the claimant's arguments that his earnings were only nominal and that nominal income is insufficient to preclude the payment of TTD compensation. Further, in State ex rel. Johnson v. Rawac Plating Co. (1991),61 Ohio St.3d 599, the claimant worked full time at a metals plant and also had a part-time job as a janitor. After he was injured at the plant, he could not return to those duties but was able to continue the janitorial duties. The court found that the claimant could not receive TTD compensation while continuing to receive remuneration for his part-time employment. Furthermore, in State ex rel. Campbell v. Indus. Comm., Franklin App. No. 02AP-1253, 2003-Ohio-4824, this court adopted the decision of the magistrate, including both the findings of fact and conclusions of law contained therein, and noted as follows:
* * * [T]he concept of "working" or "employment" is not limited to manual labor. A person who supervises others and arranges for supplies may nonetheless be engaged in work activity. This court has rejected the argument that a person is not engaged in work when the activities are managerial and do not involve strenuous physical labor. E.g., State ex rel. Nahod v. Indus. Comm.
(Sept. 2, 1999), Franklin App. No. 98AP-1157 (finding that claimant was not simply the business owner but managed and operated it); State ex rel. Kasler v. Indus. Comm. (Feb. 15, 1996), Franklin App. No. 95AP-341 (noting that work need not include physical labor in order to preclude eligibility for disability compensation).
Id. at ¶ 52.
 {¶ 29} Based on the above-cited case law, it matters not that relator's activities were minimal nor that the remuneration he received was minimal. What matters is that relator sought out and received remuneration for work activities while receiving TTD compensation.
 {¶ 30} Relator argues that the only evidence upon which the commission could rely is hearsay evidence: a letter from Wrobel who estimated and/or reconstructed relator's hours and a surveillance video which the investigators have refused to produce. Relator contends that there is no credible evidence upon which the commission could determine that he was working and make a finding of fraud.
 {¶ 31} It is the responsibility of the commission to weigh the evidence in a particular case, judge the credibility, and reach a decision. Questions of credibility and the weight to be given evidence are clearly within the discretion of the commission as fact finder. Teece, supra. Further, it is immaterial whether other evidence, even if greater in quality and/or quantity, supports a decision contrary to the commission's. State ex rel. Pass v. C.S.T. Extraction Co.
(1996), 74 Ohio St.3d 373. It is not the province of this court to reweigh the evidence.
 {¶ 32} In the present case, the BWC's investigating agents interviewed the owners of Orban's Florist. Both Mr. and Mrs. Wrobel informed the agents that relator had been working for them, off and on, for at least three years. Further, Mr. Wrobel estimated how often relator had worked for him during 2003 and 2004, and how much he was paid. Both Mr. and Mrs. Wrobel indicated that relator was usually paid in cash, unless he worked for several days in a row. Mr. Wrobel was able to give the agents three checks, one for $350 and two for $176. This does constitute "some evidence" and the commission did not abuse its discretion in relying on it. Furthermore, the magistrate has found nothing in the record to substantiate relator's argument that video
surveillance was performed in this case and that he was denied a copy of that videotape. The record indicates that agent Bratz conducted surveillance and that agents Bratz and Fender interviewed various witnesses. Further, agent Fender was present at the hearing before the DHO and he testified that there was no video surveillance made.
 {¶ 33} Relative to the finding of fraud, the magistrate notes that the prima facie elements of fraud which must be established are: (1) a representation, or whether there is a duty to disclose, concealment of facts; (2) which is material to the transaction at hand; (3) made falsely with the knowledge of its falsity or with such utter disregard and recklessness as to whether it is true or false that knowledge may be inferred; (4) with the intent of misleading another entry relying upon it; (5) justifiable reliance upon the representation or concealment; and (6) a resulting injury proximately caused by the reliance. Burrv. Stark Cty. Bd. of Commrs. (1986), 23 Ohio St.3d 69, paragraph two of the syllabus. The commission specifically found that relator knowingly concealed his work activities with the intent that the BWC rely upon his concealment and pay him benefits to which he was not otherwise entitled. Further, the commission found that the BWC's reliance upon those false statements was justifiable because relator had repeatedly been informed that working and collecting TTD compensation was prohibited. The commission pointed to the fact that relator endorsed BWC checks which clearly indicated that he was not permitted to work while receiving TTD compensation. Furthermore, the commission cited to evidence that when relator applied to have his benefit checks directly deposited, he was specifically informed that he was not permitted to work during any period in which he received TTD compensation. Relator also signed the C-84s which provide the same prohibition.
 {¶ 34} When relator sought to have his checks directly deposited he verbally indicated that he was not working and that he understood that if he was working he was not entitled to TTD compensation. Relator concealed the fact that he was working. The BWC relied upon relator's statements/actions and the BWC issued him numerous checks in this case. The BWC justifiably relied upon that concealment. As such, the magistrate finds that all the elements of fraud were present and the commission cited the evidence upon which it relied to reach that conclusion.
 {¶ 35} Relator also contends that the commission abused its discretion by denying him TTD compensation following June 28, 2004, the date he underwent surgery for his allowed conditions. While relator is correct to argue that his surgery would constitute a change of circumstances that would have qualified him for receipt of TTD compensation, the magistrate notes that relator failed to present evidence of his disability following the surgery. All the C-84s signed by Dr. Hernandez indicate that relator was temporarily and totally disabled from November 1, 2003 on. While it is true that relator had surgery in June 2004, there are no doctors' reports or any other evidence, specifically indicating that relator was temporarily and totally disabled from the date of his surgery on in the evidence. Because Dr. Hernandez's C-84s all indicate that he was temporarily and totally disabled from November 1, 2003, and the commission became aware that relator had been working during a time period wherein his treating physician was certifying him as being temporarily and totally disabled, there was no evidence in front of the commission. Further, the November 1, 2004 C-84 signed by Cyril E. Marshall, M.D., certifies TTD compensation from October 28, 2004 through January 15, 2005 for treatment without mentioning surgery. However, this magistrate notes that relator certainly could apply for TTD compensation following the date of his surgery and attach medical evidence substantiating that fact. Inasmuch as that evidence was not presented, the magistrate cannot say that the commission abused its discretion by declaring both time periods to have been overpaid especially when the second time period request had began May 11, 2004, and his surgery was June 28, 2004. Relator's argument that he has a clear legal right to receive TTD compensation from May 11, 2004, because May 10, 2004 is the last day that Mr. Wrobel indicated that he worked for Orban's Florist, does not necessarily result in an automatic finding that he is entitled to TTD compensation where he failed to present proper evidence.
 {¶ 36} Lastly, relator simply contends that declaring an overpayment and finding fraud is against public policy because the workers' compensation laws are to be liberally construed in favor of claimants. Relator essentially argues that, in the grand scheme of things, the little bit of money he made at Orban's Florist should not be held against him. In his brief, relator notes that he has a family to care for and that bills need to be paid. Relator appears to assert that he did not make enough money receiving TTD compensation to meet his expenses and, as such, he was forced to find a way to make ends meet.
 {¶ 37} While the magistrate is certainly mindful of the financial pressures that are caused when someone is injured at work and unable to work, this court still has a responsibility to apply the law as it exists today. It is not within the discretion of this magistrate to determine that relator's actions were permissible in light of the fact that his family needed the money.
 {¶ 38} Based on the foregoing, the magistrate finds that relator has not demonstrated that the commission abused its discretion by terminating his TTD compensation and declaring both an overpayment and fraud. As such, relator's request for a writ of mandamus should be denied.