DECISION
{¶ 1} Relator, Steven L. Meade, has filed this original action seeking a writ of mandamus ordering respondent, Industrial Commission of Ohio ("commission"), to vacate its order, which found that relator's receipt of temporary total disability ("TTD") compensation from May 13, 2003, through February 3, 2004, was improper because relator was engaged in remunerative activity during that time.
 {¶ 2} Pursuant to Civ.R. 53(C) and Loc.R. 12(M) of the Tenth District Court of Appeals, the court referred this matter to a magistrate of the court. The magistrate issued a decision, including findings of fact and conclusions of law, recommending that this court deny the requested writ. (Attached as Appendix A.) Relator has filed the following objections to the magistrate's decision:
[1.] The Magistrate erred as a matter of fact by finding that Mr. Meade has "run" Ron's Pizza with his wife since November of 2000.
[2.] The Magistrate erred as a matter of law by finding that Mr. Meade was overpaid temporary total disability compensation because he did not earn wages or engage in activities inconsistent with his claimed disability.
[3.] The Magistrate erred as a matter of law by distinguishing this case from controlling precedent without a valid basis for doing so.
 {¶ 3} In brief, this case arises from the payment of TTD compensation to relator for a work-related injury he sustained in February 2003. Respondent, Allied Systems Inc. ("employer"), asked the commission to declare an overpayment of that compensation based on the employer's surveillance evidence that relator was working in a self-employed capacity at a pizza shop, "Ron's Pizza." The commission declared an overpayment, finding that relator was engaged in remunerative activity from May 13, 2003, through February 3, 2004. The magistrate recommended a denial of relator's request that we vacate the commission's decision.
 {¶ 4} In his first objection, relator argues that the magistrate improperly found that he and his wife have "run" Ron's Pizza since November 2000. According to relator, he and his wife incorporated a pizza business in November 2000. Relator is the president and statutory agent for the company, but his wife "runs" the business because she hires employees, pays the bills, maintains the payroll and business records, and manages its day-to-day operations. While relator acknowledges that the magistrate correctly found that he delivered pizzas, made food, and took customer orders, he argues that he did not earn remuneration of any kind for these activities.
 {¶ 5} In her findings of fact, the magistrate stated: "Ron's Pizza has been run by relator and his wife since November 17, 2000." While not necessarily agreeing that the magistrate misused the term "run," we sustain relator's objection for the limited purpose of clarifying the nature of relator's relationship to the business. Accordingly, we strike the first sentence of ¶ 15 of the magistrate's findings of fact, and we insert the following two sentences:
On November 17, 2000, relator incorporated Ron's Pizza Enterprises, Inc., which does business as "Ron's Pizza." Relator is the president and statutory agent for the business.
We adopt the remainder of ¶ 15 without change. Further, we find that neither the magistrate's use of the term "run" nor our limited change has any substantive bearing on our decision.
 {¶ 6} In his second objection, relator argues that he did not earn wages or engage in activities inconsistent with his claimed disability and, therefore, the magistrate erred by finding that he was overpaid. In his third objection, relator elaborates further, arguing that the magistrate did not have a valid reason for distinguishing this case from controlling precedent. Through these objections, relator essentially raises the same issues he presented to the magistrate. However, we agree with her careful analysis of those issues.
 {¶ 7} First, as the magistrate found, relator need not receive "wages" for his activities to have a preclusive effect on TTD compensation. Rather, the issue here is whether his activities generated income directly for the business. See State ex rel. Cassano v. Indus. Comm.,
Franklin App. No. 03AP-1227, 2005-Ohio-68; State ex rel. Campbell v.Indus. Comm., Franklin App. No. 02AP-1253, 2003-Ohio-4824; State ex rel.Gyarmati v. George E. Fern Co., Franklin App. No. 01AP-1357, 2002-Ohio-4323; State ex rel. Greathouse v. Indus. Comm. (Dec. 7, 1993), Franklin App. No. 92AP-1390. While relator argues that he did not replace any employee, there can be no question that his activities — taking orders, preparing food, serving customers, working the cash register, and delivering pizzas — generated income for the business.
 {¶ 8} Second, we do not agree that the facts of this case are indistinguishable from the facts at issue in the cases relator cites, including State ex rel. Am. Std., Inc. v. Boehler, 99 Ohio St.3d 39,2003-Ohio-2457; and State ex rel. Ford Motor Co. v. Indus. Comm.,98 Ohio St.3d 20, 2002-Ohio-7038. As the magistrate found, relator's hands-on engagement in the activities that produce income for a pizza business are distinguishable from the more passive, supervisory activities at issue in Boehler and Ford Motor Co., activities that produced income only secondarily.
 {¶ 9} For these reasons, we sustain relator's first objection for the limited purpose stated above, and we overrule relator's second and third objections.
 {¶ 10} Finding no error of law or other defect on the face of the magistrate's decision, and based upon an independent review of the evidence, this court adopts the magistrate's decision as our own, with the following exceptions. As noted, we strike the first sentence from ¶ 15 of the magistrate's findings of fact, and we insert the two sentences provided above. In addition, we strike the word "formally" in the third sentence of ¶ 32 and insert the word "formerly" in its place. With these exceptions, we otherwise adopt the findings of fact and conclusions of law contained in the magistrate's decision. In accordance with that decision, the requested writ of mandamus is denied.
Writ of mandamus denied.
BROWN, P.J., and McGRATH, J., concur.
 APPENDIX A IN THE COURT OF APPEALS OF OHIO TENTH APPELLATE DISTRICT
State of Ohio ex rel. Steven L. Meade, :
 Relator, :
 :
v. : No. 04AP-1184
 :
Industrial Commission of Ohio : (REGULAR CALENDAR)
and Allied Systems, Inc., :
 Respondents. :
 :
 MAGISTRATE'S DECISION Rendered on May 16, 2005 Heinzerling Goodman, LLC, and Jonathan H. Goodman, for relator.
Jim Petro, Attorney General, and Charissa D. Payer, for respondent Industrial Commission of Ohio.
Scott, Scriven Wahoff, LLP, William J. Wahoff and C. BradleyHowenstein, for respondent Allied Holdings, Inc., Allied Systems, Ltd., Subsidiary.
 IN MANDAMUS {¶ 11} Relator, Steven L. Meade, has filed this original action requesting that this court issue a writ of mandamus ordering respondent Industrial Commission of Ohio ("commission") to vacate its order which found that his receipt of temporary total disability ("TTD") compensation from May 13, 2003 through February 3, 2004 was improper due to a finding that relator was engaged in remunerative activity. Relator contends that there is not "some evidence" in the record to support the commission's decision and requests this court issue a writ of mandamus ordering the commission to vacate that order.
Findings of Fact:
 {¶ 12} 1. On February 2, 2003, relator sustained a work-related injury and his claim has been allowed for: "sprain of right upper arm (NOS); sprain/strain right biceps."
 {¶ 13} 2. Relator's treating physician certified that relator was temporarily and totally disabled and relator received TTD compensation from February 3, 2003 through February 3, 2004, at which time his TTD compensation was terminated based upon a finding that he had reached maximum medical improvement, and his doctor's statement that he was capable of working without restrictions.
 {¶ 14} 3. On March 25, 2004, respondent Allied Systems Inc. ("employer") filed a C-86 motion requesting that all of the TTD compensation paid to relator from February 3, 2003 through February 3, 2004 be declared overpaid based on evidence submitted by the employer that relator was working in a self-employed capacity at a pizza shop called Ron's Pizza Enterprises, Inc. ("Ron's Pizza").
 {¶ 15} 4. [On November 17, 2000, relator incorporated Ron's Pizza Enterprises, Inc., which does business as "Ron's Pizza." Relator is the president and statutory agent for the business.] The employer hired an investigator from Omega Insurance Services who observed relator preparing food in the kitchen, serving customers food and drinks, delivering pizzas, taking orders over the phone, taking money from customers, using the cash register, and specifically entering a high school carrying a large stack of pizza boxes and then coming out of the high school with the empty pizza boxes.
 {¶ 16} 5. The employer's motion requesting the commission declare an overpayment was heard before a district hearing officer ("DHO") on June 10, 2004. The DHO applied State ex rel. Ford Motor Co. v. Indus. Comm.,98 Ohio St.3d 20, 2002-Ohio-7038, and State ex rel. Blabac v. Indus.Comm. (1999), 87 Ohio St.3d 113, and concluded as follows: no overpayment of TTD compensation for the period February 3, 2003 through May 12, 2003, as there is no evidence that relator was engaged in any form of remunerative work activity over this time period; however, the DHO declared that all compensation paid beyond May 12, 2003 was overpaid and should be recouped in accordance with R.C. 4123.511(J), for the following reasons:
The District Hearing Officer finds that these activities were directly related to generating income for Ron's Pizza Enterprises, of which Meade is the president. The District Hearing Officer finds that Meade's activities can be contrasted with the claimant, the owner of a lawn care business, in State ex rel. Ford Motor Co. v. Indus. Comm., (2002),98 Ohio St.3d. In Ford Motor the court found that the claimant's activities of writing payroll checks and fueling and driving riding lawnmowers onto a truck once a week, did not, in and of themselves generate income but only produced money secondarily. Unlike the claimant in Ford Motor, Meade is shown on numerous occasions performing activities which directly generated income for his business, such as delivering pizzas to customers, preparing food for customers and taking money from customers. While Meade contends that he was never paid for these activities, the District Hearing Officer finds that as an officer and president of the corporation, he does benefit as he has a financial interest in the success of the business. The District Hearing Officer further finds that even though the activities appear to be sporadic, as the surveillance was only done at various times, the court in State ex rel. Blabac v. Indus.Comm. (1999), 87 Ohio St.3d, held that even sporadic remunerative work activity precludes the receipt of temporary total compensation.
 {¶ 17} 6. Relator appealed and the matter was heard before a staff hearing officer ("SHO") on September 9, 2004, and resulted in an order affirming the prior DHO order as follows:
It is the finding of the Staff Hearing Officer that temporary total disability compensation is denied from 05/13/2003 through 02/03/2004 and an overpayment is declared for this compensation to be collected pursuant to Ohio Revised Code 4123.511(J). It is the finding that the evidence in file indicates the injured worker was engaged in "remunerative employment" during this period of time by working as a self-employed businessman along with his wife for Ron's Pizza Enterprises, Inc. The evidence indicates he was the registered Statutory Agent of the corporation, the president and one of the incorporators. He and his wife are the only stockholders. The evidence also indicates the injured worker took an active and physically demanding part in the business working in the kitchen, conducting repairs, delivering pizzas and conducting various other work related activities.
The basis for this decision is the video tape surveillance and investigative reports (Omega Insurance Services) which was conducted from May, 2003 through December, 2003. This evidence indicates the injured worker was continuously and on a part-time basis involved with his pizza business performing physical activities which resulted in profits for his business. The injured worker's activities with his business (Ron's Pizza Enterprises, Inc.) constitutes self-employment and remunerative work activity.
It is further the finding of the Staff Hearing Officer that the injured worker is entitled to receive temporary total disability compensation for the period from 02/03/2003 through 05/12/2003 and no overpayment is declared for this period of time. There is no evidence on file that the injured worker was engaged in "remunerative employment" during this specific period.
 {¶ 18} 7. Relator's further appeal was refused by order of the commission mailed September 29, 2004.
 {¶ 19} 8. Thereafter, relator filed the instant mandamus action in this court.
Conclusions of Law:
 {¶ 20} In this mandamus action, relator argues the commission abused its discretion by finding that he was ineligible for TTD compensation where there is no evidence that he earned wages or engaged in activities which were inconsistent with his claimed disability. For the reasons that follow, this magistrate disagrees with relator's argument.
 {¶ 21} In Ford, the Supreme Court of Ohio summarized the law pertinent to this action. The Ford court stated, at ¶ 18-19, as follows:
TTC is prohibited to one who has returned to work. R.C. 4123.56(A);State ex rel. Ramirez v. Indus. Comm. (1982), 69 Ohio St.2d 630 * * *. At issue is whether claimant's activities for Nature's Creations constitute work. For the reasons that follow we find that they do not.
Work is not defined for workers' compensation purposes. We have held, however, that any remunerative activity outside the former position of employment precludes TTC. State ex rel. Nye v. Indus. Comm. (1986),22 Ohio St.3d 75, 78 * * *. We have also held that activities medically inconsistent with the alleged inability to return to the former position of employment bar TTC, regardless of whether the claimant is paid. Stateex rel. Parma Community Gen. Hosp. v. Jankowski, 95 Ohio St.3d 340,2002-Ohio-2336 * * *, ¶ 15. Activities that are not medically inconsistent, however, bar TTC only when a claimant is remunerated for them. Id. at ¶ 14-15 * * *. Work, moreover, does not have to be full-time or even regular part-time to foreclose TTC; even sporadic employment can bar benefits. State ex rel. Blabac v. Indus. Comm.
(1999), 87 Ohio St.3d 113[.] * * *
 {¶ 22} However, in cases where a claimant's alleged work activities involve a business operated or controlled by the claimant, the remuneration issue bears heightened scrutiny. In that situation, the absence of a wage of salary paid to the claimant is not necessarily determinative of the remuneration issue. Furthermore, the absence of a profit from the business venture is not necessarily determinative. The issue is whether the claimant was involved in business activities for a financial or remunerative gain, not whether the claimant actually realized any gain or whether the gain was substantial. See State ex rel.Gyarmati v. George E. Fern Co., Franklin App. No. 01AP-1357, 2002-Ohio-4323, and State ex rel. Greathouse v. Indus. Comm. (Dec. 7, 1993), Franklin App. No. 92AP-1390.
 {¶ 23} In his argument, relator asserts that the Supreme Court of Ohio has defined the concept of remuneration as one involving direct exchange of labor for pay and cites State ex rel. Am. Std., Inc. v. Boehler,99 Ohio St.3d 39, 2003-Ohio-2457. The magistrate finds that a closer examination of the court's decisions in Ford and American Standard, is warranted.
 {¶ 24} In the Ford case, the claimant, Christopher Posey, held two jobs concurrently: one with Ford Motor Company and the other was his own lawn care business. From 1994 through 1996, Posey was the sole employee of his lawn care business. In 1997, he hired another employee.
 {¶ 25} In 1998, Posey injured his neck while working at Ford. Posey's injury forced him to stop his physical participation in his lawn care business. As a result, he hired three additional employees. The injury also temporarily forced Posey from his job at Ford and he received TTD compensation from June 1998 through September 8, 1998.
 {¶ 26} Ford later sought to recoup TTD compensation alleging that Posey's participation in his lawn care business constituted work and, therefore, prohibited the receipt of TTD compensation. Evidence presented regarding Posey's participation in his business, however, established only that Posey signed for worker's paychecks and fueled and drove riding lawnmowers onto a truck. Surveillance of Posey by Ford supported Posey's contention that he did no landscaping work in connection with his business while receiving TTD compensation.
 {¶ 27} The commission refused Ford's request to declare an overpayment. Ford filed a mandamus action and the commission's decision was upheld. The Ford court, at ¶ 20-24, explained:
Ford asserts that Blabac is controlling and bars TTC here. In Blabac,
the claimant, John Blabac, was getting TTC when it was discovered that he was earning wages as a scuba diving instructor. While his partner did the physical instruction, Blabac sat at poolside with a clipboard, grading the students. Id. at 113 * * *. Whether he lectured, prepared or graded written exams, or otherwise instructed students was not known.
The commission terminated TTC and declared an overpayment. Blabac argued that only "substantially gainful" work could bar TTC, and that his work was neither substantial nor gainful. We disagreed with Blabac, holding that low paying and sporadic employment was still work. Because Blabac was paid for his efforts, we determined that they constituted work, and barred TTC. We suggested that wage-loss compensation would have been more appropriate for Blabac's circumstances.
Ford argues that under Blabac, any work precludes TTC and asserts thatBlabac forbids TTC here. Ford, however, overlooks the distinction between this case and Blabac. Blabac never disputed that his actions constituted work. He argued instead that he had not worked enough to prevent TTC. Claimant herein, on the other hand, argues that his activities were not work, rendering Blabac off point.
Claimant's assertion has merit. Unlike the claimants in Blabac, Nye,State ex rel. Johnson v. Rawac Plating Co. (1991), 61 Ohio St.3d 599, * * * and State ex rel. Durant v. Superior's Brand Meats, Inc. (1994),69 Ohio St.3d 284, * * * this claimant's activities did not, in and of themselves, generate income; claimant's activities produced money only secondarily, e.g., claimant signed the paychecks that kept his employees
doing the tasks that generated income.
Obviously, application of this rationale must be applied on a case-by-case basis and only when a claimant's activities are minimal. A claimant should not be able to erect a façade of third-party labor to hide the fact that he or she is working. In this case, however, claimant's activities were truly minimal and only indirectly related to generating income. Accordingly, we affirm the judgment of the court of appeals.
(Emphasis sic.)
 {¶ 28} In American Standard, the claimant, Robert Boehler, also held two jobs concurrently: one with American Standard and the other was his own rental property business. Boehler testified that every week there were activities in connection with the properties, but that since the worsening of his condition, he had been unable to do any of the repair and maintenance work he had formerly done and had hired contractors to do that work. An investigator testified that he saw Boehler at the properties engaging in the following activities: directing workers, picking up tools and carrying them, passing tools, measuring, pouring paint into a paint sprayer, helping to clean up after painting, helping cut boards and put paneling in place, delivering materials to a work site in a truck, and assisting workers to unload equipment.
 {¶ 29} The commission concluded that Boehler's activities did not constitute employment but were merely supervision of investment property. The commission determined that the activities of Boehler were reasonable actions of a person who has a substantial capital investment in the form of a passive investment in rental properties and that such activity did not rise to the level of self-employment as alleged.
 {¶ 30} This court agreed with the commission's determination and the Supreme Court of Ohio agreed. The Boehler court stated, at ¶ 22-26, as follows:
TTC compensates for the loss of earnings a claimant sustains while his or her injury heals. State ex rel. Ashcraft v. Indus. Comm. (1987),34 Ohio St.3d 42, 44 * * *. This means that TTC is precluded when the claimant begins to earn again, i.e., when he or she is paid money in direct exchange for labor. State ex rel. Ford Motor Co. v. Indus. Comm.,98 Ohio St.3d 20, 2002-Ohio-7038 * * *, supports this, by refusing to disqualify claimants whose activities" produced money only secondarily" or were "only indirectly related to generating income." Id. at ¶ 23 and 24.
The disputed amount in this case was not given in exchange for claimant's labor — it was paid pursuant to a contractual rental agreement. Certainly it can be argued that if claimant's apartments were not kept up, rental income could evaporate. There are, however, two key flaws in this logic. First, it runs counter to Ford. There, claimant's industrial injury not only removed him from his former job but also kept him from his side business of mowing lawns. Claimant was forced to hire others to do this work and paid them accordingly. Ford argued that claimant's act of signing payroll checks to these workers constituted "work" so as to foreclose TTC. We disagreed, writing that "this claimant's activities did not, in and of themselves, generate income; claimant's activities produced money only secondarily, e.g., claimant signed the paychecks that kept his employees doing the tasks that generated income." (Emphasis sic.) Id. at ¶ 23.
In the case before us, rental upkeep generated income secondarily. It was the contractual relationship between claimant and his tenants that directly compelled the payment of money. It was not directly generated by the claimant's labor.
Second, American Standard confuses the concept of remuneration with claimant's physical presence at the rental site. If claimant had never visited his properties and had never participated in their rental or upkeep, leaving those tasks to others, claimant would still have received his rental income. Few would argue that in such a case, TTC would be precluded. This indeed suggests that the pivotal point of American Standard's position is claimant's physical presence at the rental units. Nothing, however, prevents claimant from going there. The only thing thatis barred is claimant's participation in any activities that are medically inconsistent with his allegation of an inability to return to his former position of employment or that directly generate income, and there is evidence of neither here.
Ford acknowledged the perils of situations such as that at issue, cautioning that "this rationale must be applied on a case-by-case basis and only when a claimant's activities are minimal. A claimant should not be able to erect a façade of third-party labor to hide the fact that he or she is working." Id., 98 Oho St.3d 20, 2002-Ohio-7038, * * * at ¶ 24.
 {¶ 31} Turning now to the facts of the present case, the record shows that relator was observed providing "customer service" at Ron's Pizza. Relator was seen serving customers, working in the kitchen, working the cash register, and delivering pizzas; clearly, this "customer service" is in fact the "work activity" that directly generates sales which produce revenue for the pizza business. In Ford, Posey did not engage in landscaping or lawn mowing activities, the activities that directly produced the revenue of the business. Posey engaged only in activities, such as writing checks to employees and refueling mowers, that only secondarily produced income. In American Standard, Boehler hired contractors to do the repair and maintenance work that he had done before his injury. Boehler supervised those employees and helped out, to a certain extent; however, his actions only secondarily produced income as the rental properties would have brought in income whether he had been present at the work site or not.
 {¶ 32} In the present case, the magistrate finds that relator was indeed engaged in work activity and that, even though relator was not being compensated in the form of wages, the activities which relator undertook were income generating activities which preclude the payment of TTD compensation. Although relator argued at oral argument that the pizza shop business would have been sustained whether he had been physically present at the shop or not (as with Boehler in American Standard), relator's activities while present at the pizza shop are different from the activities undertaken by Boehler at the rental properties and byPosey relative to his lawn care business. Both Boehler and Posey hired employees to do the work they [formerly] performed for their business (lawn care services and maintenance). Further, their activities did not directly generate income. Here, relator's activities of preparing food, serving customers, working the cash register, and delivering pizzas are the very activities which generate income for the pizza shop. Relator's mere presence is not determinative — his actions while present are. As such, the magistrate finds that relator has not demonstrated that the commission abused its discretion by finding that he had been overpaid TTD compensation and ordering that the amount be recouped.
 {¶ 33} Based on the foregoing, it is the magistrate's decision that relator has not demonstrated that the commission abused its discretion and relator's request for a writ of mandamus should be denied.